## ONONDAGA COUNTY v. CITY OF AMSTERDAM.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

1. PAUPERS (§ 21*)—RESIDENCE—LIABILITY FOR SUPPORT.

Laws 1909, c. 46 (Consol. Laws, c. 42) § 40, provides that a person of full age who shall be a resident of any town or city for one year shall be deemed settled therein, and shall so remain until he has gained a like settlement in some other town or city in the state, or shall have removed from the state, and remained therefrom one year. Section 51 declares that a poor person who of his own accord shall come or stray from one city, town or county to another not legally chargeable with his support shall be maintained by the county superintendent of the county where he may be; and provides for notice to the overseer of the poor of the city to which the pauper belongs. *Held*, that a married woman having lived for several years in A. prior to her abandonment had a poor settlement there, notwithstanding she subsequently removed with her husband to another county where he supported her for a few months when he again abandoned her, so that the city of A. was liable for her support in such county.

[Ed. Note.—For other cases, see Paupers, Cent. Dig. §§ 97–104; Dec. Dig. § 21.*]

2. PAUPERS (§ 24*)—SETTLEMENT—REMOVAL—RELIEF.

Where a poor person removed with her husband from the city where she had a settlement to plaintiff county, where her husband again abandoned her, and where she needed relief, the superintendent of the poor of the county was required by Laws 1909, c. 46 (Consol. Laws, c. 42) § 51, to furnish the necessary relief, and was prohibited by section 42 from returning her against her will to the city in which she had a pauper's residence.

[Ed. Note.—For other cases, see Paupers, Dec. Dig. § 24.*]

3. PAUPERS (§ 39*)—RESIDENCE—REMOVAL—RELIEF—REIMBURSEMENT.

Where a pauper having removed from the city where she had a residence to plaintiff county, needed additional relief which was furnished by the county superintendent of the poor, the expense thereof, though chargeable to the county in the first instance, as provided by Laws 1909, c. 46 (Consol. Laws, c. 42) § 42, was recoverable from the city of the pauper's residence.

[Ed. Note.—For other cases, see Paupers, Dec. Dig. § 39.*]

4. MUNICIPAL CORPORATIONS (§ 1021*) — "CLAIMS" — LIMITATIONS — CHARTER PROVISIONS.

Amsterdam City Charter (Laws 1885, c. 131) § 31, requires that all claims against the city be presented to the council for audit, and also requires presentation of claims for injuries arising out of defective highways within a stated time, and declares that no action shall be commenced thereon until three months after the presentation of the claim. *Held*, that the three months required to elapse after presentation of the claim before suit can be brought thereon refers only to claims for injuries arising out of defective highways, and does not relate to a claim of

a county against the city for relief furnished to a pauper having a residence in the city.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 1021.*

For other definitions, see Words and Phrases, vol. 2, pp. 1202–1211; vol. 8, p. 7604.]

5. PAUPERS (§ 39*)—MANAGEMENT—STATUTES—CLAIMS AGAINST CITY.

Amsterdam City Charter (Laws 1885, c. 131) § 53, conferred on the city's overseer of the poor exclusive care of the city's poor, with the same general duties and liabilities as an overseer of the poor of a town, he being required to report to the common council in detail all appropriations, expenditures, temporary relief, and allowances made by him for each preceding month, and being authorized to receive and disburse moneys and to determine the question of liability for a payment of claims for support. Laws 1909, c. 46 (Consol. Laws, c. 42) § 52, provides that on the service of notice, by the superintendent of the poor of a county, that a poor person having a pauper's residence in a city has strayed or come into the county needing assistance, the overseer of the poor of the city may remove the poor person to his city and support her, or within 30 days notify the county superintendent denying liability, and section 54 provides that on the service of such notice of denial, the county superintendent within three months shall commence an action against the city for the expenses of the support of the poor person, or in case of failure to do so be precluded from all claim against the city. *Held* that, on the denial of liability by the city of Amsterdam to support a pauper having a residence therein, pursuant to a notice of the county superintendent of the poor of O. county, the county was not required as a condition precedent to its right to recover for relief furnished to such pauper to present a claim therefor to the city council, under Amsterdam City Charter (Laws 1885, c. 131) § 31, requiring that all claims against the city shall be so presented and referred before suit thereon.

[Ed. Note.—For other cases, see Paupers, Dec. Dig. § 39.*]

Appeal from Trial Term, Onondaga County.

Action by Onondaga County against the City of Amsterdam. From a judgment in favor of plaintiff and from an order denying defendant's motion to dismiss the complaint, and for a nonsuit, it appeals. Affirmed.

See, also, 64 Misc. Rep. 181, 117 N. Y. Supp. 1121.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Christopher J. Heffernan, for appellant.
Herbert L. Smith, for respondent.

KRUSE, J. The principal question presented upon this appeal is whether the support of Anna Malvina Lively, a poor person, is chargeable to the county of Onondaga or the city of Amsterdam. She is a married woman and has five small children. For several years prior to February, 1907, she resided in the city of Amsterdam. Her husband lived with her there until September 11, 1906. On that day he left his family and went to Cincinnati, Ohio; lived there a short time and then went to Marion, Ind. He did not send for his wife and children as he had promised to do. He next met her on the 5th of February, 1907, in Syracuse, and they agreed to live together again. She returned to Amsterdam, got her children and belongings and went

back to Syracuse on February 13, 1907. Her husband lived with her and maintained her and the children there until May 23, 1907, when he again abandoned her, without means of support. She has not heard from him since that time. After he left her the first time, she did what she could to maintain herself and the children, doing washing and sewing, but was unable to do so without assistance. On November 3, 1906, she applied to the overseer of the poor of the city of Amsterdam for aid, which was given her, and she received aid from him thereafter from time to time until just before going to Syracuse; the last being orders for groceries and coal, received January 4, 1907. Two days after her husband abandoned her in Syracuse, she applied to the overseer of the poor of the city of Syracuse for assistance, receiving an order for groceries chargeable to the county of Onondaga, amounting to $2; and from that day until the commencement of the action, relief was furnished to her by the county of Onondaga at various times, amounting in all to the sum of $50. On the 28th day of May, 1907, the superintendent of the poor of Onondaga county served notice upon the overseer of the poor of the city of Amsterdam, in conformity with the statute, notifying him that Anna Malvina Lively, a poor person, had been brought or had come or strayed into the county of Onondaga, without legal authority, and applied for public relief, and was then being maintained by the county, and that the city of Amsterdam was liable for her support, and requiring the overseer of the poor of the city of Amsterdam to take charge of her and remove her forthwith, and support her. On May 29, 1907, the overseer of the poor served a notice on the superintendent denying all liability of the city of Amsterdam for her support.

The statutes relating to the poor have been consolidated recently (Laws 1909, c. 46 [Consol. Laws, c. 42]), but no substantial change has been made so far as I can discover, in any provision affecting this controversy. A poor person is one who is unable to maintain himself. Laws 1909, c. 46, § 2. A person of full age who shall be a resident and inhabitant of any town or city for one year shall be deemed settled in such town or city and shall so remain until he shall have gained a like settlement in some other town or city in this state, or shall remove from this state and shall remain therefrom one year. Laws 1909, c. 46, § 40. Section 51 of the act provides, among other things, that a poor person who shall of his own accord come or stray from one city, town, or county into any other city, town, or county not legally chargeable with his support shall be maintained by the county superintendents of the county where he may be; and provides for the giving of a notice such as was given in this case. The next section (section 52) provides that after the service of the notice the county superintendents or overseers to whom the notice is given may take and remove such poor person to their county, town, or city and there support him, paying the expense of such notice and of the support of such person; or within 30 days after receiving the notice they shall, by a written instrument under their hands, notify the county superintendents from whom such notice was received, denying liability for the support of such poor person.

Unquestionably, Mrs. Lively became a poor person in the city of Amsterdam, and was such when she left there and went to the city of Syracuse. At that time she had a settlement as a poor person in the former city, and she could gain no settlement in any other town or city while she was being supported or relieved at the expense of the city in which she had a settlement. Laws 1909, c. 46, § 41. People ex rel. French v. Lyke, 159 N. Y. 149, 53 N. E. 802. For a time the poor law provided that a person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere of one year; doing away, as Judge Vann says in People ex rel. May v. Maynard, 160 N. Y. 453, 460, 55 N. E. 9, 10, "with the legal fiction of a residence presumed to continue long after it has in fact ceased and thus simplifies the law." The act was passed in 1897 (Laws 1897, c. 203), but was repealed in 1900 (Laws 1900, c. 345), and is not embodied in the present consolidated poor law statutes (Laws 1909, c. 46). While Mrs. Lively and her children were supported by her husband after she went to Syracuse to live, that continued only for three or four months; not long enough to gain a settlement there. So that within a day or two after he abandoned his wife the second time she was again in need, and it was the duty of the superintendent of the poor of the county in which she then was to furnish her the necessary relief. He could not refrain from so doing because she had a settlement in the city of Amsterdam; nor could he against her will remove her from his county to the city of Amsterdam. Laws 1909, c. 46, §§ 42, 51. Even if, as between the city of Syracuse where she then was and the county of Onondaga the expense in the first instance was chargeable to the county (Laws 1909, c. 46, § 42), I think the county had a remedy over against the city of Amsterdam for the expense so incurred.

That brings me to the next question urged by the appellant as a ground for reversal. It is contended that under the provisions of the city charter of Amsterdam, a statement of the plaintiff's claim should have been presented to the common council of the city, and that such presentation is a condition precedent to the maintenance of the action. Section 31 of the charter of the city of Amsterdam (Laws 1885, c. 131) requires that "all accounts and claims against the said city * * *" shall be presented to the common council and referred to a standing committee of said board for examination, who shall report thereon; that the common council shall hear, examine, and determine the same as a board of town auditors, having the same powers and duties as town auditors. Specific provision is also made for the presentation of claims for injuries arising out of defective highways, which must be presented within the time therein stated, and no action shall be commenced thereon until three months after the presentation of the claim.

I agree with counsel for the appellant that the three months period refers only to claims of the latter description, and not to accounts and claims generally against the city. But, as it seems to me, the provisions of the charter referred to do not apply at all to claims or causes of action such as this. The overseer of the poor has the ex-

clusive care and management of the poor of the city, and his duties and liabilities in general are the same as an overseer of the poor of a town. He is required to report to the common council, in detail, all appropriations, expenditures, temporary relief and allowances made by him during the month preceding. His bond includes a correct accounting of any funds or moneys to be received and disbursed by him. While his duties are more specifically defined in some respects and are perhaps to some extent more comprehensive, his duties and obligations as regards the proceedings connected with and caring for a poor person such as the one under consideration, are substantially the same as of overseer of the poor in towns. He receives and disburses moneys and upon him is imposed the duty of determining the question of liability and the payment of claims like this. Laws 1885, c. 131, § 53. After the service of the notice upon the overseer he could take and remove the poor person to his city and support her; or, within 30 days, notify the county superintendent of the poor from whom he had received the notice, denying liability, as was done in this case. Laws 1909, c. 46, § 52. Upon the service of such notice of denial the county superintendent was required within three months to commence an action in the name of his county against the city for the expenses incurred in the support of such poor person and prosecute the same, or in case of failure to do so, be precluded from all claim against the city. Laws 1909, c. 46, § 54.

Reading together the provisions of the defendant's charter and the provisions of the poor law, it seems clear to me that the duties of determining the liability and the justness of the plaintiff's claim devolved upon the overseer of the poor of the city of Amsterdam, and not upon the common council; that the presentation of the claim to the common council under such circumstances would have been entirely nugatory, in view of the determination of the overseer of the poor that no liability existed against the city.

I think the case was correctly decided, and that the judgment and order should be affirmed, with costs. All concur.