Matter of Settlement, Etc., of GEORGE McCUTCHEON, a Poor Person.

(County Court, Schuyler County, December, 1898.)

Poor Law, chapter 225 of Laws of 1896, as amended by chapter 203 of Laws of 1897 — Settlement not lost by the residence for one year of a poor person in the town where he is supported by the town of his settlement.

The provisions of chapter 203 of the Laws of 1897, amending the ° Poor Law (Laws of 1896, chap. 225), and enacting that a " person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for one year ", when taken in connection with sections 2 and 41 of the Poor Law, indicate that the amendment or 1897 was not intended to apply to a person residing in a county, whose towns support their own poor, who has for many years been supported as a poor person in the town of his residence, which was not that of his settlement, upon the guaranty of the latter town to the former; and, notwithstanding his nonresidence in the town of his settlement, that town remains liable for his support.

APPEAL from decision and order of county superintendent of the poor of Schuyler county, that McCutcheon is a charge upon town of Cayuta.

Charles B. Swartwood, for appellant.

Owen Cassidy, for respondent.

KEELER, J.    For over thirty years prior to April 8, 1889, George McCutcheon had been a resident and inhabitant of the town of Cayuta, Schuyler county, N. Y.    On that day he moved to reside in the town of Lodi, Seneca county, N. Y., and remained until March, 1890, when he moved back to the county of Schuyler and to the town of Montour.    In May, 1890, he became unable to support himself, and was aided by the poor authorities of Montour.

In Schuyler county, at that time, and now, the respective towns support their own poor.

In 1891, pursuant to regular notice, pro and con, the superintendent of the poor of Schuyler county decided McCutcheon to have a settlement in Cayuta and his support chargeable to that town, and on appeal, this decision was affirmed, and judgment duly entered.

Since that time, and up to the present, McCutcheon has resided in the town of Montour, and has been supported by the town of Cayuta. In each year, the expense of the town of Montour in maintaining him, after allowance by the superintendent, has been by the county board of supervisors added to the tax of the town of Cayuta (§ 34, Rev. Stat., and 45 of Poor Laws of 1896) and ultimately received by the town of Montour. This was done in the year 1897.

In June, 1898, the overseer of Cayuta notified the overseer of Montour, in writing (§ 42, chap. 225, Laws of 1896), to the effect that McCutcheon no longer had a settlement in Cayuta, and requiring the overseer of Montour to provide for his support. The town of Montour gave due counter notice (§ 43) and a hearing was duly had before the county superintendent, who on July 14, 1898, made and duly filed in the county clerk's office his certificate and decision that the legal settlement and charge for McCutcheon's maintenance is upon the town of Cayuta.

By chapter 203, Laws of 1897, a new section (57) was added at the end of article III (the one relating to " settlement and place of relief of poor persons ") of the general Poor Law of 1896, as follows:

" § 57. Settlement, how lost.—A person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for one year."

Counsel for appellant contends that under this statute, McCutcheon by continuously living for more than one year out of the town of Cayuta has lost his settlement in that town, and that the fact, that during that time and under such former adjudication, he had been supported by the town of Cayuta, as a poor person of that town, does not change the rule. I am aware that appellant's counsel has high authority for his contention, in Town of Onondaga v. City of Syracuse, 22 Misc. Rep. 265.

If any part of the Poor Law of 1896 is repealed or changed by this new section, it is by implication, therefore it becomes important how the new section, as interpreted by appellant's counsel, will harmonize with the rest of the law. If not we should seek other reasons that he urges, for the new law, and a different construction, if we can find one, that will not work mischief, and will leave the general scheme of the Poor Law intact. Hayden v. Pierce, 144 N. Y. 512-516; People ex rel. Gilmore v. Hyde, 89 id. 18; Suburban R. T. Co. v. Mayor, 128 id. 510; Riggs v. Palmer, 115 id. 506;

People v. Charbineau, id. 433; People ex rel. Onondaga Co. Sav. Bk. v. Butler, 147 id. 164.

" It is a well-settled rule (says Tracy, J., in People ex rel. Gilmore v. Hyde, 89 N. Y. 18) that in the construction of a statute every part of it must be viewed in connection with the whole so as to make all its parts harmonize if practicable and give a sensible and intelligent effect to each."

In the scheme for a " settlement " the   Poor Law embraces all resident inhabitants.   In the " relief " part it embraces only " poor persons."   The second section of the Poor Law defines a " poor person " as " one unable to maintain himself," and declares, " and such person shall be maintained by the town, city, county or state, according to the provisions of this chapter."   In the scheme for their " *relief* " the basis of it all is that the " poor person " shall be supported " in the town or county where he may be."   To this end are sections 42, 43, 44, 45, 50, etc.   The town, " where he may be," supporting him can have an adjudication as to where he is chargeable and compel reimbursement.   The town supporting him is forbidden, under penalty, from removing him to the place where he is chargeable (§ 50, and Smith v. Brundage, 17 Week. Dig. 266), and the Poor Law of 1896 (following the Revised Statutes) provides in unmistakable terms that the residence of the poor person supported as such in the town, " where he may be," shall not operate to change his settlement or make him a charge upon the town supporting him.

Section 30 of the Revised Statutes, part I, m. p. 621, provided, " But no residence of any person as a pauper, in the county poorhouse or place provided for the support of the poor, or in any town while supported at the expense of any other town or county shall operate to give such pauper a settlement in the town where such actual residence may be had."

This hits three classes of cases; first, where the poor person is *in the county poorhouse;* second, where the poor person, although not in the county poorhouse, is yet in a *place provided* for the support of the poor; and third, no matter where the poor person may be, providing he is actually in one town and is supported by another town, or the county.

The Poor Law of 1896 provides in substance the same.   Section 41 provides, " No residence of any such poor person in any almshouse, while such person, or any member of his or her family is supported or relieved at the expense of any other town, city,

county or state, shall operate to give such poor person a settlement in the town where such actual residence may be," and in "definitions" (§ 2) "An 'almshouse' is a place where the poor are maintained at the public expense."

It will be seen that this definition is very broad. It is not a *county poorhouse* nor a *place provided,* but *a place, any place* where the poor are maintained at public expense.

Looking at these provisions of the Poor Law and its general scheme of "*relief,*" it seems to me it cannot be that the construction claimed by the appellant can prevail.

It would render this scheme in great part nugatory. The idea of this claimed construction seems to arise from confounding the word "*person*" and "*poor person*" as spoken of in the statute. "*Every person*" (§ 40) may gain a "*settlement.*" And it is this same "*every person*" that the new section speaks of in using the language, "a person who," etc. It is the "*poor person*" who, as I said, cannot be removed and must be supported, "where he may be." The *poor person does not gain or lose a settlement once established,* by agreement, or after contest by the superintendent of the poor *until he again maintains himself and ceases to be a public charge.* Every other person may roam about as he pleases, subject to the general law of "Settlement."

When section 57 became the law there must have been thousands of poor persons in the state in the situation of McCutcheon, the town supporting them, guaranteed by the statute (§ 45) that it should be reimbursed, "*as long as such expenses shall be incurred,*" and that such residence should not affect the question of settlement.

There seems to me to be another and more reasonable construction of this new section which will be in harmony with the rest, and will not work rank injustice.

Before the new section was added, a person having a settlement in a particular town, city or county would, if he became a poor person, still have a settlement in, and be a charge upon, that town, etc., no matter how much he might have wandered around in the state, *if he had not* in the meantime resided in *any* one town, city or county one whole year. Sitterly v. Murray, 61 How. Pr. 367, and other cases; Rev. Stat. and § 40, Poor Laws of 1896.

The new section was incorporated into the Poor Law to relieve this difficulty. Under section 57 a residence *elsewhere* for one year would lose a person a settlement, although this residence might

not be in one place so that he would gain a new settlement. The word " *continuous* " in the section referring to *time* and not to *place* of residence. The Law of 1896 made this so if the person resided *out of the state*. This section merely extends the same rule to absent residence *within the state*, and was not at all intended to affect the status of the " poor person."

It was to relieve a town or city in which a person had gained a settlement from all solicitude and care as to his whereabouts, after he had moved away and gone one year. Before, as we have said, a person, even although able-bodied, could not have lost his former settlement until he had gained a new one, or resided for a year out of the state, and he might wander around in the state from town to town and from county to county, not as a tramp, but as a resident, yet not residing in any one place long enough to gain a settlement, and after the lapse of a dozen years or more, if he should return to the county, be charged back to the town from whence he had wandered.

We think it was to meet this condition that section 57 was newly added and incorporated as a part of the Poor Law of the state, and that the legislature had no thought of enabling one town to unload its poor upon some other town that had no legal right to remove them, and was compelled to support them.

The order of the Schuyler county superintendent of the poor of July 14, 1898, must be affirmed, with costs against the appellant.

So ordered.