Matter of the Settlement of MARY PORTER, BESSIE PORTER, CHARLES PORTER, LILLIAN PORTER and LLOYD PORTER, Wife and Children of DUDLEY PORTER, Poor Persons.

(County Court, Wayne County, June, 1910.)

Poor — Settlement and removal of paupers — Liability of county or town of settlement for support of removed pauper.

Where residents of a town not poor persons within the statute remove to another town in the same county and receive aid there within a year from the time of their removal, the expense is chargeable to the town from which they came.

APPEAL from a decision of the superintendent of the poor of the county of Wayne, determining the settlement of the above poor persons to be in the town of Sodus, Wayne county, New York.

James P. Thompson, for appellant.

Horton & Brown, for respondent.

KNAPP, J.    The questions arising in this proceeding are contained in the statement of facts presented to the court. From these facts it appears that the above poor persons, for over one year prior to the time that they removed into the town of Sodus, Wayne county, N. Y., had been residents of the town of Huron, Wayne county, N. Y., and that the husband and father of said persons, during the time of their residence in the town of Huron, was living and caring for his family; that at no time during their residence in the town of Huron had they been assisted by the poor authorities of the town of Huron, nor were they such poor persons as are defined by the statute. After their removal to the town of Sodus, the husband and father died, within one year from the time of their removal to said town of Sodus. The mother and children, being the poor persons named above, within one year from the time they removed to the town of Sodus, made application to and received help from the officers of the town of Sodus who had charge of the poor therein, who served the required notice upon the overseer of the poor of the town of Huron, notifying him that they were charges upon that town. The counter notice, required by statute, was served upon the overseer of the poor of the town of Sodus, denying the question of the liability of said town; and the questions raised were determined by the superintendent of the poor of this county in favor of the town of Huron. From that decision an appeal was taken to this court.

The question to be determined, briefly, is this: Is a person who has gained a residence in a town in this county and who leaves that town not a poor person within the pro-

County Court, Wayne County, June, 1910. [Vol. 68.

visions of the statute and removes into another town of this county and there becomes, within a year after such removal, a poor person and receives help·from that town, chargeable to the town from whence he came?

The question is somewhat unusual and decidedly new. The decisions in this State are not uniform upon the question, and the reading of the Poor Law does not entirely answer it. It may not be out of place to trace briefly the history of the poor laws of this State and of the mother country in order to show what development, if any, has been made for the care and support of those who are unable to care for themselves.

Prior to the time of Henry VIII. the poor of England subsisted entirely upon private charity. The first statutes that I have been able to find that in any way provide for the care and support of indigent persons are 12 Rich. II., chap. 7, and 19 Henry VIII., chap. 12. By those statutes the poor were directed to remain in the towns in which they were born or in which they resided and had resided for a period of three years. These seem to be the first statutes that have for their object the care of the poor by local communities. But it was not until Statute 27 Henry VIII., chap. 55, that any compulsory method was instituted. Prior to those statutes the poor of England were cared for in a large measure in the monasteries and by religious organizations. They composed two separate and distinct classes, viz.:

*First.* Those who, on account of misfortune, were unable to care for themselves, and

*Second.* Those who were able to care for themselves but who were too lazy to do so.

The burden upon the religious organizations had become so great and the numbers of the second class, above referred to, so numerous, that it became imperative that some statute should be enacted to regulate the care and support of the indigent classes and to eliminate, as far as possible, those who were able to care for themselves but who had no apparent desire to do so.

By Statute 43 Elizabeth, chap. 2, overseers of the poor were appointed in every parish. They were designated by

two justices of the peace dwelling in the parish in which they resided and their duties were:

*First.* To raise competent sums for the support of the indigent persons.

*Second.* To provide work for those who were able and competent to do it and desired to do it, but who had been unable to find it.

*Third.* To eliminate, as far as possible, those who were able to work but who did not desire to do so.

The difficulty that arose under the statute that I have last quoted was that no sufficient regulations were provided for the settlement of the poor persons in the individual communities and the result was that there was constant litigation between the different parishes as to the liability of each parish for the care of the poor person specified.

By Statutes 13 and 14 Car. II., chap. 12, a legal settlement was declared to be gained in the following different ways, to wit:

(1) By birth in the parish.

(2) By inhabitancy, apprenticeship or service for forty days within the parish; and powers were given to the justices of the peace to remove all intruders who did not come within the designation above cited.

This statute opened the way to many frauds which were sought to be corrected by 1 Jac. II., chap. 17, which required that a notice should be given to the parish and a settlement could be gained by such a residence; and by subsequent enactments the provisions of the statute as to settlements have been broadened.

This, briefly, is the history of the poor laws of England. It will be observed that, from very early times, the development of the poor laws has been based upon actual experience. The question as to the liability of the different communities or parishes for the care and support of indigent persons has been a constant source of trouble since the time poor laws were first enacted to the present day.

Chapter 600, Van Schaack, 1773, Vol. 5, Colonial Laws of New York, brings to this State in a large measure the laws of England, so far as they relate to the care of the poor.

As many of the English statutes had done, that act provides that a forty days' settlement and entry of notice was requisite for any person to gain such a settlement in a town or parish so that such town, district or parish would be liable for the care and support of such poor persons. It also prohibited the removal of poor persons from one parish or place to another.

By chapter 184 of the Laws of 1801, it was provided, among other things, that a person who shall have come to inhabit any town or city within this State and shall have actually occupied a tenement to the value of thirty dollars or upwards for two years and paid such rent, or, shall for himself have executed any public annual office in said town or city through one whole year, or who shall have paid taxes in said town or city for the space of two years, and every person apprenticed and who has served for not less than two years in said town or city is adjudged to have a legal settlement in that town or city.

It further provides that, if any person other than those mentioned comes into a city or town of this State, it is the duty to give to the overseers of the poor of the town into which such person comes, a notice in writing; and, in case the overseers of the poor of said town or city do not within twelve months after such notice cause such person to be removed, then he is deemed to have gained settlement in the town into which he has come. It is further provided in the act that a warrant may be sworn out and that such person who shall stray into the town may be removed to his last place of settlement; and, if he continues to return, if a man, he shall be whipped not exceeding thirty-nine lashes and, if a woman, not exceeding twenty-five lashes, and that shall continue as often as such person shall return to said town where he had no legal settlement. It provides also that, if any poor person should remove or come out of any town or city where he has legally resided into any other town or city within this State and should there become sick or lame so that said poor person cannot be removed to the place of his settlement, it shall be the duty of the overseers of the poor in the town in which he is to care for him, and to give

notice to the overseers of the poor in the town from whence he came; and, if the same is not contested by such overseers, then the locality in which the poor person had his settlement shall be liable for his care.

Except in one provision of the statute, it refers to "any person" and provides a system for the care of the poor in this State more drastic than any of the acts prior or subsequent thereto.

Sections 40 and 42 of the Consolidated Laws (chap. 42) relate to the settlements of poor persons and as to how they are to be supported and are substantially the same as sections 33 and 35 of title 1, chapter 20, of the Revised Statutes of the State of New York (2d ed., Vol. 1, p. 630). It will be noted that, in said section 42 of the Consolidated Laws, the words " poor person " are used. In section 35 of the Revised Statutes, *supra,* the word " pauper " is used. Substantially the same scheme, however, is laid down in sections 33 and 35 of the Revised Statutes, *supra,* as is contained in the Poor Law, and was at the time of this controversy.

It will be noted, upon a careful reading of section 40 of the Poor Law, that *every person* of full age who shall be a resident and inhabitant of any town or city for one year, together with the members of his family, shall be deemed settled in said town or city and shall so remain until he shall have gained a like settlement in some other town or city in the State, or shall remove from the State and remain there one year; it evidently being the intention of the Legislature to provide a place of settlement for every person, whether he be poor or not, and that that settlement should continue, whether he be poor or not, until he shall have gained a settlement in some other locality in the county or State, or should remain without the State for a period of one year. If this person shall go into any other town of the county, then he shall, if he is a poor person, be supported and provided for in the following manner:

(1) If he has gained a settlement in any town or city of the county in which he is, he shall be maintained by such town or city.

(2) If he has not gained a settlement in any town or city

9

in the county in which he becomes a poor person, sick or infirm, then and in that case he shall be supported and relieved by the superintendents of the poor at the expense of the county.

In other words, if a person leaves the town in which he has gained a settlement under section 40 of the Poor Law, and goes into any other town of the county and there becomes disabled or sick, so that it is necessary for him to apply to the poor authorities of that town for assistance, then and in that case he must be supported under subdivision 1 of section 42 of the Poor Law, by the town, in the county in which he has a settlement. ·If, however, he has gained no settlement in any town or city in the county in which he becomes a poor person, then and in that event, under subdivision 2 of section 42 of the Poor Law, he must be supported by the superintendent of the poor at the expense of the county. The authorities cited by the respondent upon this appeal are authorities based upon subdivision 2 of section 42 of the Poor Law and also upon section 51 of the Poor Law.

The case of Sitterly v. Murray, 63 How. Pr. 367, is exactly in point. This is based upon the sections of the Poor Law substantially as they are to-day. That case was cited with approval and the same doctrine laid down in the case Matter of McCutcheon, 25 Misc. Rep. 650. In the case last cited, the court, referring to section 57 of the Poor Law, which was repealed, said: "Before the new section was added, a person having a settlement in a particular town, city or county would, if he became a poor person, still have a settlement in, and be a charge upon, that town, no matter how much he might have wandered around in the state, if he had not in the meantime, resided in any one town, city or county one whole year."

And the court further in the course of its opinion said that section 51 of the Poor Law, which provided that a settlement gained in a town or city of a State is lost by continuous residence elsewhere for one year, was passed for the purpose of correcting the injustice of section 40 of the Poor Law. However, section 57 of the Poor Law, above

referred to, has been repealed, so that it leaves the Poor Law just as it was and has been for more than seventy-five years in this State.

In the case of Bellows v. Courter, 6 N. Y. Supp. 73, a case in this department, the court, in quoting the sections of the Poor Law in regard to the settlements and the support of the poor, said: " Two things are made entirely clear by the provisions of the statute so far quoted, first — that the question of the settlement of any poor person or pauper is to be considered in determining the question of the liability for his support *only* as between two towns of the same county which are liable for the support of their own poor, or as between such a town and the county to which it belongs, and second — that every poor person who has not a settlement in some town of the county in which he became poor, must be supported or relieved at the expense of the county."

So it is apparent that there is a different rule of law between the several towns of a county and a county, and between the several towns themselves, as to the support of the poor, than exists between the towns of one county and another county; and that distinction seems to be recognized not only by subdivision 2 of section 42 of the Poor Law, but also by the authorities cited by the appellant.

It necessarily follows, therefore, the above named poor persons having gained a settlement in the town of Huron, as provided by section 40 of the Poor Law, and having been relieved by the town of Sodus within the year, they not having gained a settlement in that town, and said towns being within the county of Wayne, and the required notices having been given, that the town of Huron is liable for the support of such poor persons.

The decision of the superintendent of the poor must, therefore, be reversed, with costs, and the settlement of the above named poor persons determined to be in the town of Huron, Wayne county, N. Y.

Decision reversed, with costs.