that any delay in deliveries had been acquiesced in; that respondent had disposed of the rejected material elsewhere at an increased price, and concluded with a plea for payment based on the ground that the entire transaction had been unprofitable to the respondent and the material supplied at a loss. Manifestly most of this letter was of no probative force on any issue involved, and I do not think that the court's rejection of it when offered in its entirety constituted error.

[4] The appellants contend that an improper measure of damages was adopted by the learned trial court. The respondent did not attempt to prove any loss of profits. It did prove that in order to perform the contract a corduroy road was necessarily constructed, and it recovered the reasonable expense thereof. Upon the facts in this case I do not think that such recovery was error. Expenditures necessarily made in anticipation of performing a contract may in many instances be recovered as an element of damage sustained after performance has been wrongfully prevented. Long Island C. & S. Co. v. City of New York, 204 N. Y. 73, 97 N. E. 483; United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; Phillips, etc., Const. Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341. It may be that a recovery for both the prospective profits and the preliminary expenditures could not be sustained. See Mackey v. Olssen, 12 Or. 429, 8 Pac. 357.

[5] Assuming, however, that the contract was being conducted by the respondent at a loss, it would have been entitled to recover nominal damages at least for the breach; and I see no reason why in such instance it cannot also recover incidental expenditures necessarily made in anticipation of performance.

[6] It may be that the respondent could have been required to deduct from the cost of the road the value of its use in the performance of so much of the contract as had been completed at the time of the breach, but no such question was raised at the trial, and such an apportionment cannot be made upon appeal.

The judgment and order should be affirmed, with costs.

JENKS, P. J., and WOODWARD and RICH, JJ., concur. BURR, J., dissents upon the ground that plaintiff was not entitled to recover the costs or any portion of the costs of constructing the corduroy road.

---

BROOME COUNTY v. CORTLAND COUNTY.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

PAUPERS (§ 39*)—LEGAL SETTLEMENT—LIABILITY FOR AID.

Poor Law (Consol. Laws 1909, c. 42) §§ 40, 42, 51, provide for the acquisition of legal settlements, and declare that a person who has made settlement in any town shall be maintained thereby, and that, when a poor person is removed or goes from a town or county into any other town or county not legally chargeable with his support, he shall be maintained by the superintendent of the county, who may recover the same. A person and his family acquired a legal settlement in a town in B. county. For several months he and his family resided in T. county, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for some months they resided in C. county, and then returned to the town. They had received no aid from T. or C. counties, and their going was voluntary. *Held*, that the town or B. county was liable for their subsequent support, and there could be no recovery from C. county therefor.

[Ed. Note.—For other cases, see Paupers, Cent. Dig. §§ 162–179; Dec. Dig. § 39.*]

Lyon, J., dissenting.

Appeal from Trial Term, Broome County.

Action by the County of Broome against the County of Cortland. From a judgment for plaintiff, defendant appeals. Reversed, and judgment directed for defendant.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

James F. Tobin, of Cortland, for appellant.
James K. Nichols, of Binghamton, for respondent.

JOHN M. KELLOGG, J. Oscar Austin and his family of four children were natives of Lisle, Broome county, and resided there without material interruption until March 12, 1909. Therefore they had a legal settlement in that town under section 40 of the Poor Law, and such settlement continued until they had gained a like settlement in some other town or city by a residence of a year. Chapter 46, Laws of 1909 (Consol. Laws 1909, c. 42). From about March 12, 1909, to about the middle of October, 1909, they resided in the county of Tioga, and from the latter date until the family returned to Lisle, about May, 1910, they resided in Cortland county. They had not received any aid from the poor authorities of Tioga or Cortland counties, and the going from Tioga to Cortland county and from Cortland county to Lisle were entirely voluntary acts upon their part.

Section 42 of the Poor Law required that this family be supported by the town of Lisle or the county of Broome, the place where they were when they applied for relief. Section 51 provides that if a poor person is removed, or comes from a city, town, or county into any other city, town, or county "not legally chargeable with his support," he shall be maintained by the superintendent of the county where he may be, and then provides for giving notice to a county which it is claimed is liable under the law for the support of the poor person. This section does not apply to this case, as the Austins in returning to Lisle did not come into a town or county not chargeable with their support, but came to the county legally chargeable with their support.

County of Delaware v. Town of Delaware & Sullivan County, 105 App. Div. 130, 93 N. Y. Supp. 954, and like authorities, do not apply to this case. They proceed upon the theory that section 51 of the Poor Law furnishes no remedy over against the town where the poor person had a legal settlement, unless the person was a poor person when he came into the county actually furnishing the relief. That case does not affect the question as to which county is primarily liable for the support of the poor person; but, as the statute requires the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

person to be supported in the town where he is and only provides a remedy over in case the person coming into the county was a poor person when he came, it held that there could be no recovery. But here the town of Lisle or the county of Broome was legally chargeable with the support of the family when the relief was granted. Section 51 gives plaintiff no right to recover over, and, as the burden rested upon Lisle or Broome county, the county of Cortland is not liable.

We have not discussed the facts as to the situation of the Austin family, but have so far treated the case as one of law. As a matter of fact, however, we are satisfied that the family of Oscar Austin were poor, shiftless, and improvident, and were considered fair subjects for charity and treated as such before they left Broome county, and that they were really poor persons within the meaning of the statute when they came to Tioga and Cortland counties.

The judgment is therefore reversed upon the law and the facts. The particular findings of fact disapproved of are the second, third, and fourth, and judgment is directed in favor of the defendant in the court below, with costs, and with costs of this appeal. All concur, except LYON, J., dissenting.