TOWN OF MANLIUS, Plaintiff, *v.* TOWN OF POMPEY, Defendant.

Supreme Court, Onondaga County, December 8, 1930.

506

*Bailey, Ryan & Agan,* for the plaintiff.

*Cleveland J. Kenyon,* for the defendant.

CHENEY, J. This is an action brought by one town against another to recover a sum of money paid out by the plaintiff for the support of poor persons under a mistake of fact, it being alleged that the support of those poor persons was legally chargable to the defendant. Defendant has moved under rules 106 and 112 of the Rules of Civil Practice for judgment dismissing the complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action.

The facts alleged in the complaint, which for the purposes of this motion must be deemed to be true, are as follows: That one Jesse Turverey, with his wife and four children, about August 1, 1918, removed from the town of Pompey to the town of Manlius. On April 21, 1919, before the family had acquired a residence in the town of Manlius, the family applied to the overseer of the poor of the town of Pompey for relief as poor persons, and thereafter the said Jesse Turverey died May 7, 1919, leaving him surviving his wife and four children. The town of Pompey did there-

after maintain and support the said family as public charges upon said town until May 1, 1921. About March 18, 1921, the Onondaga county board of child welfare, after investigation, allowed to said widow for the support of herself and her children the sum of thirty dollars per month, and said board did pay to said widow the said allowance from May 1, 1921, until October, 1930. The amount of such allowance was paid out of the appropriation made by the county of Onondaga for the purpose of said board, and in turn was included each year in the tax levy upon the town of Manlius upon the assumption that because said family were at the time living in the town of Manlius, such town was liable for the support of such poor persons, until such error was discovered, on or about October 3, 1928, at which time the amount of such allowance was charged to and included in the tax levy upon the town of Pompey, and since that time the latter town has collected the same and paid it into the treasury of Onondaga county. During the time that such amount was charged to and included in the tax levy of the town of Manlius, that town collected and paid into the treasury on account thereof the sum of $4,690, and it is to recover such sum from the town of Pompey that this action is brought.

The question to be determined is whether a cause of action exists in favor of the town of Manlius to recover from the town of Pompey the sums of money which had been so charged against it, and which the town of Pompey should have paid.

The question as to which municipality should be charged with the expense of relief afforded under the Child Welfare Act (Gen. Mun. Law, arts. 7-A and 7-B, as amd.), at least since the amendments to such act made in 1922, would seem to be determined by the fact whether the applicant was " legally entitled to relief " as a poor person as that condition is defined and regulated by the Poor Law. (Op. Atty.-Gen. 1924, p. 170.) The authority to grant the allowance, whether the application is made under either section 153 or section 157 of the General Municipal Law, seems to be conditioned upon the applicant being " legally entitled to relief within the county " where the application is made. That phrase is not defined by the General Municipal Law, and we must, therefore, examine the provisions of the Poor Law, a cognate act, to ascertain its meaning. The Poor Law (repealed by Laws of 1929, chap. 565) was in force during the whole of the time covered by the payments made here, and not the Public Welfare Law, which is the law now applicable. " A ' poor person ' is one unable to maintain himself, and such person shall be maintained by the town, city, county or state, according to the provisions of

this chapter." (Poor Law, § 2.) This definition was amplified in *County of Tompkins* v. *County of Ontario* (92 Misc. 272) as follows: " It is common knowledge who the ordinary ' poor persons ' are. They are those without property, without habits of industry or thrift, improvident, usually physically or mentally deficient, who are unable through efforts of their own to gain a livelihood. They are constantly seeking, and generally receive at somewhat regular intervals, public charity or assistance; they have a practically constant status as ' poor persons '; they are not able to maintain themselves for any long period of time even under ordinary conditions."

By whom such " poor person " shall be maintained is determined by his " settlement," for " if he has gained a settlement in any town or city in such county, he shall be maintained by such town or city." (Poor Law, § 42.) Every person of full age, and the members of his family, including his wife, who shall not have gained a separate settlement, who shall be a resident and inhabitant of any town or city for one year, shall be deemed settled in such town or city, and shall so remain until he shall have gained a like settlement in some other town or city. (Poor Law, §§ 40, 41.) That " like settlement " can only be gained by a residence in the other town or city for a year. (*Broome County* v. *Cortland County*, 154 App. Div. 349.) In this case it is not alleged that this Turverey family had a settlement in the town of Pompey, but it may be assumed from the fact that such town assumed their maintenance after the death of the father before they had resided a year in the town of Manlius. Consequently, it is clear that at the time the town of Pompey assumed the maintenance of this family in 1919, such poor persons were properly chargeable to the town of Pompey.

But an entirely different question arises as to their status where the allowance for their support was made by the board of child welfare in 1921. At that time more than one year had expired since they had taken up their residence in the town of Manlius, and the question is whether a person can legally obtain a settlement in the place of his actual abode, while he is actually being-supported as a public charge by the town of his former residence. Under the provisions of the Revised Statutes for the support of the poor (1 R. S. § 30, p. 621) there was no doubt that such a settlement could not be so acquired, but upon the adoption of the original Poor Law (Laws of 1896, chap. 225, §§ 40, 41), the language of the Revised Statutes was changed and the provision re-enacted in precisely the same language as appeared in sections 40 and 41 of the Poor Law of 1909 (Chap. 46) which was the law in force when the transactions in question here took place. The Court of Appeals

held (*People ex rel. French* v. *Lyke*, 159 N. Y. 149) that such change of language did not change the rule, and that the section (41) should be construed as if the word " or " followed the word " alms-house " in the last sentence, and that, therefore, a person supported at public expense did not acquire a new settlement by a residence in another town for a year. In *People ex rel. May* v. *Maynard* (160 N. Y. 453) it was held that the amendment of 1897 (Chap. 203), which provided " that a person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for a year," did not change the rule laid down in the *Lyke* case that a settlement cannot be gained in the town where the actual residence may be so long as the poor person or any member of his family is supported or relieved at the expense of any other munici-pality. However, chapter 203 of the Laws of 1897 was repealed in 1900 (Chap. 345), and did not appear in the consolidation of 1909. The last authority upon the question appears to be *Matter of Porter* (68 Misc. 124), where it was held that where residents of a town not poor persons within the statutory definition remove to another town in the same county and receive aid there within a year from the time of the removal, the expense is chargeable to the town from whence they came.

While it seems to be the law that under the circumstances appear-ing here the support of this family was chargeable to the town of Pompey and was erroneously charged by the county to the town of Manlius and collected from it, we come to the consideration of the question whether the town of Manlius can obtain reimburse-ment for the sums so paid by it from the town of Pompey, by an action by law as this is. I am convinced that such an action will not lie. There seems to be a distinction in the remedies allowed by the Poor Law to compel the support to be borne by the munici-pality properly chargeable therewith, whether the dispute arises between two towns in the same county, and possibly between a town and the county, or between municipalities in different counties. Where the controversy is between two towns in the same county or between a town and the county in which it is situated, the matter is regulated by Poor Law, section 42, subdivision 4, sections 43, 44 and 45. The remedy, when the proper steps are taken as therein laid down, is by the board of supervisors of the county adding to the tax upon the town chargeable with the expense, the amount expended by the other town, which amount when collected shall be credited to the account of the town which incurred the expense. If the controversy is between municipalities in dif-ferent counties or the counties themselves, the pratice is regulated by Poor Law, sections 51 to 54, and by section 53 specific authority

is given to the county to maintain an action against the municipality chargeable with the support. No such authority is contained in the Poor Law when the controversy is between towns in the same county, and I must hold that the remedy therein given is exclusive, and that an action will not lie.

The motion to dismiss the complaint is granted, with costs.