TOWN OF KIANTONE, Plaintiff, *v.* COUNTY OF CHAUTAUQUA, Defendant.

Fourth Department, June 29, 1933.

*Gerald A. Herrick* [*Benjamin S. Dean* of counsel], for the plaintiff.

*J. Russell Rogerson,* for the defendant.

EDGCOMB, J.    This controversy comes to us upon an agreed state of facts.    The precise question which we are called upon to answer is whether the county of Chautauqua is legally liable to the town of Kiantone for certain moneys paid to Anna Hedberg, a widowed

mother, by the county treasurer of Chautauqua county upon the voucher of the board of child welfare of said county, and which have been charged to, and have been paid by said town. If the answer to that question is in the affirmative, we must order judgment for the plaintiff in the sum of $4,441 and interest; if our answer is in the negative, defendant is entitled to judgment.

For several years prior to October 29, 1926, Anna Hedberg resided with her husband on a farm in the town of Kiantone in the county of Chautauqua. They had a family of nine children. On the above-mentioned date Mr. Hedberg died. His widow continued to live in the town of Kiantone with her children until January 13, 1927, when she voluntarily moved to the city of Jamestown, where she has since resided. On the 7th day of February, 1927, she applied for relief under the provisions of the Child Welfare Act (Gen. Municipal Law, art. 7-A). Up to this time she had never received public aid from any municipality of the State. Her application was approved by the board of child welfare, and she was made an allowance. Payments aggregating $4,441 have been made to her from time to time from May 1, 1927, to date. The relief granted was meritorious, and the action of the board in making the allowance was taken after proper consideration, and after the adoption of appropriate resolutions. All payments to the applicant were made by the county treasurer, and were charged to the town of Kiantone upon the books of the treasurer, and the amount thereof, together with the other town charges, was raised by taxation, and paid by the taxpayers of said town without protest or objection. No notice of the application made by Mrs. Hedberg for relief was ever given to the supervisor or the welfare officer of the town, nor was any notice of the allowance of the relief given to either of said officials, although a resolution had been adopted by the board of supervisors back in 1916, directing the secretary of the child welfare board to notify the supervisor of any town which it was sought to hold liable for the relief about to be accorded to some applicant, before any action was taken.

Under this state of facts, we think that these payments were a proper charge against the town of Kiantone.

The Child Welfare Act was added to the General Municipal Law by chapter 228 of the Laws of 1915. It was enacted to take care of widowed mothers, with one or more children under the age of sixteen years, in order that such children may suitably be cared for in their homes by such mothers, rather than in some public institution. (Gen. Municipal Law, § 148.)

Section 154 of the act provides that the board of supervisors of any county may determine " whether or not the actual expense for

the relief of widowed mothers and their children under this article shall be a charge upon the county or upon the respective towns thereof." To the same effect is subdivision 1 of section 158 of article 7-B of the General Municipal Law (added by Laws of 1922, chap. 546).

In 1915 the board of supervisors of Chautauqua county adopted a resolution which provided that the board of child welfare, in drawing its orders, should specify whether the amount was a proper charge upon the county, or upon any of the towns or cities within the county, and that, when it appeared that the allowance was properly chargeable against a town, the treasurer should enter the amount against the respective town or city. That resolution has been in full force and effect during all the time these payments have been made.

The statute provides that such resolution should be passed by a two-thirds vote of all the members elected to the board, and the plaintiff calls attention to the fact that it does not appear that the resolution in question received such a vote. It is stipulated, however, that it was " duly adopted." If it had not been passed in accordance with the mandate of the statute, it would not have been " duly " adopted.

It is very true that this resolution might have been drawn in more artistic language, but there can be no doubt that, by its passage, the board of supervisors intended to take advantage of the option given it by sections 154 and 158 of the General Municipal Law, and make the relief paid to widowed mothers under the act a charge against the town where the applicant had her settlement. Any other conclusion would make its provisions meaningless.

While the Child Welfare Act was not made a part of the Poor Law, or of its successor, the Public Welfare Law, its general purpose, like the other acts, is to grant relief to the dependent poor.

It was undoubtedly attempted by the framers of the Child Welfare Act to relieve a dependent mother, whose husband had died, or had been sent to a State institution for the insane, or to a State prison, and who had left her with young children to bring up, from the stigma of pauperism, if she asked for public aid. It is difficult, however, to put such a person in any different class from one who is taken care of by the public under the Public Welfare Law. The result is the same; the money comes from the same source. The only difference is the public agency to which the application is made, and through which the relief is administered. No relief can be granted under the Child Welfare Act unless the aid is necessary to

enable the mother to bring up her children, and unless such children would have to be cared for in an institutional home, if relief were not given the mother. (Gen. Municipal Law, § 153, subd. 3.)

The Attorney-General of this State, in a well-considered opinion, has held that "legally entitled to relief," as defined in the Child Welfare Act, means legally entitled to assistance under the Poor Law, and that the acceptance of succor from a board of child welfare makes the recipient thereof a "poor person" within the meaning of the Poor Law. (Report of Attorney-General of the State of New York, 1924, p. 170.)

Since the adoption of the Child Welfare Act the Poor Law has been repealed, and in its place has been enacted the Public Welfare Law, which became effective in part on April 12, 1929, and wholly on January 1, 1930, in which statute a recipient of public aid is not designated as a "poor person." During a portion of the time that relief has been accorded to Mrs. Hedberg, however, the Poor Law was in effect.

Had Mrs. Hedberg been granted aid under the Poor Law or the Public Welfare Law, the cost would have been a proper charge against the town of Kiantone.

Section 40 of the Poor Law and section 53 of the Public Welfare Law define how a settlement is gained. Every person of full age, who has been a resident and inhabitant of any town or city for one year, is deemed settled in such town or city, and remains so until he has gained a like settlement in some other town or city in this State, or until he has removed from the State, and remains away for a year. In determining the place of settlement, the time during which a person is receiving public relief and care is not taken into consideration.

There is a clear distinction between the place of legal settlement and the place of residence or the domicile of the poor person.

Mrs. Hedberg had resided in the city of Jamestown less than one month before she made application to the public authorities for relief, and less than four months before she received aid. She had not gained a settlement there. She could not have two settlements at the same time. Her settlement was in the town of Kiantone, where she had resided for more than one year. She could not gain a settlement in Jamestown until she had resided there one year. (*County of Broome* v. *County of Cortland*, 154 App. Div. 349.)

When Mrs. Hedberg found it necessary to ask for public aid for her support, that relief was a charge against the town where she had her settlement. (*Sitterly* v. *Murray*, 63 How. Pr. 367; *Matter of Porter*, 68 Misc. 124.)

It is pointed out by the Attorney-General in the opinion above

referred to, and also by Mr. Justice CHENEY in *Town of Manlius* v. *Town of Pompey* (140 Misc. 505), that, by the amendments of 1922 and 1923, the Legislature has taken the child welfare system out of its special category, so far as residential qualifications are concerned, and has thrown the question of residential eligibility of applicants back upon the provisions of the Poor Law and its successor, the Public Welfare Law, relating to qualifications necessary to entitle one to public assistance.

The conceded facts do not show that the formal notice, which was required by the Poor Law and which is now required by the Public Welfare Law, was given to the proper town authorities when Mrs. Hedberg applied for relief. It does appear, however, that the town had actual notice that aid was being given her under the Child Welfare Law at the town's expense, because from the very outset the responsibility for this relief was assumed by the town, and was placed in its annual budget, and was raised each year by taxation without objection or protest. Under these circumstances, we feel that the lack of proof that the required formal notice was given in the first instance will not defeat defendant's rights, or entitle plaintiff to recover here.

Upon the record before us, we have reached the conclusion that the plaintiff cannot recover, and that judgment should be ordered for the defendant.

All concur.

Controversy determined in favor of the defendant, without costs.