THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN B. FRENCH, as Overseer of the Poor of the City of Ithaca, Respondent, *v.* JAMES S. LYKE, as Superintendent of the Poor of the County of Tompkins, Appellant.

1. POOR LAW — CONSTRUCTION — OMITTED WORD SUPPLIED. The disjunctive " or " is to be understood after the word " almshouse," in the last sentence of section 41 of the Poor Law of 1896 (Ch. 225).

2. SETTLEMENT — STATUS OF COUNTY POOR NOT CHANGED BY RESIDENCE. Thus read, the revision of the Poor Law in 1896 did not so change the conditions of settlement that a poor person residing in a town or city for more than one year, while relieved at the expense of the county, ceases to be a county charge and becomes thereafter chargeable to the town or city.

3. MEANING OF " ALMSHOUSE." *Quære*, as to the statutory meaning and application of the word, " almshouse."

*Matter of French*, 37 App. Div. 625, affirmed.

(Argued April 18, 1899; decided May 2, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 23, 1899, affirming an order of Special Term that a peremptory writ of mandamus issue, requiring James S. Lyke, as superintendent of the poor of the county of Tompkins, to issue his warrant on the county treasurer of Tompkins county for the payment to John B. French, as overseer of the poor of the city of Ithaca, of the sum of $71.75, with interest from May 21, 1898, said sum being the expense necessarily incurred in relief of certain poor persons claimed to be chargeable to the county of Tompkins.

The facts, so far as material, are stated in the opinion.

150      People ex rel. French v. Lyke.      [May,

Opinion of the Court, per O'Brien, J.      [Vol. 159.

*David M. Dean* for appellant.   The support of the poor persons in question is chargeable to the city of Ithaca and not to Tompkins county.   (L. 1896, ch. 225, §§ 40, 41; L. 1897, ch. 203, § 57; *Matter of Connellan*, 25 Misc. Rep. 592; *Town of Onondaga* v. *City of Syracuse*, 22 Misc. Rep. 265; *Matter of McCutcheon*, 25 Misc. Rep. 650; *Matter of Prime*, 136 N. Y. 347; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Newell* v. *People*, 7 N. Y. 97; *People ex rel.* v. *Woodruff*, 32 N. Y. 355; *Matter of Miller*, 110 N. Y. 216; *Karst* v. *Gane*, 136 N. Y. 316.)

*Jared T. Newman* for respondent.   The law under which these persons are chargeable to the county is unchanged by the revision of 1896.   (1 R. S. 621, § 30; L. 1896, ch. 225, § 41; *Hughes* v. *Farrar*, 45 Me. 72; Black Interp. Laws, 368; Endlich Interp. Stat. § 381; *Henavie* v. *N. Y. C. & H. R. R. R. Co.*, 154 N. Y. 278; *Sitterly* v. *Murray*, 63 How. Pr. 367; *Matter of McCutcheon*, 25 Misc. Rep. 650; *People ex rel.* v. *Comrs. of Taxes*, 95 N. Y. 554; *People ex rel.* v. *McClave*, 99 N. Y. 83; *Bell* v. *Mayor, etc.*, 105 N. Y. 139; *People ex rel.* v. *Lacombe*, 99 N. Y. 43, 49; *People* v. *U. Ins. Co.*, 15 Johns. 380; *Theriat* v. *Hart*, 2 Hill, 380.)   Chapter 203 of the Laws of 1897 in no way affects this question. (*Town of Onondaga* v. *City of Syracuse*, 22 Misc. Rep. 265.)

O'Brien, J.   The only question in this case is with respect to the settlement of certain poor persons in order to determine whether the expense incurred in extending public aid for their support is chargeable to the city of Ithaca or to the county of Tompkins.   It appears that Mrs. Mary Giles and her three children are poor persons, and that the expense of their support is in whole or in part a public charge.   The children are under sixteen years of age, and although they actually reside in Ithaca, they have, since April 11th, 1893, to October, 1897, been regarded and accepted by the county superintendent of the poor as chargeable to the county.   They have never been supported by the town or city.   During the whole period mentioned they were cared for by the relator as overseer of

the poor of the city, but under the direction of the defendant, the overseer of the poor of the county, and the bills incurred for public aid were presented semi-annually by the relator to the defendant, who in every case drew his warrant upon the county treasurer for the payment of the same, as required by law.   After October 1, 1897, the relator continued to furnish relief to the family as before, and about April 1, 1898, the relator presented to the defendant a bill for the expenses necessarily incurred for payment as before, but payment was refused on the ground that the law had been so changed that the four persons named became a charge on the city, and the county was relieved from all further obligation to pay for their support.   There is no controversy in regard to the amount of the claim, or with respect to the propriety of the relief given, or touching the duty of the defendant to draw his warrant upon the county treasurer for payment of the same, unless his contention be correct that the law has been so changed with respect to the settlement of poor persons that henceforth the county is not liable for the payment of the claim.

For over sixty years the locality to which these poor persons were chargeable was determined by the following provision of the statute : " No residence of any person as a pauper, in the county poorhouse, or place provided for the support of the poor, or in any town while supported at the expense of any other town or county, shall operate to give such pauper a settlement in the town where such actual residence may be had."   (Sec. 30, 1 R. S. 621.)   It is plain that under this provision the poor persons in question could not acquire a settlement in Ithaca, since, during the whole period of their residence there, they were supported by the defendant as superintendent of the poor of the county.   We think no substantial change of the law in this respect was intended or effected by the recent revision of the statute.   The old statutes on the subject were repealed, and the settlement of poor persons must now be ascertained from sections forty and forty-one of article three, chapter 225, Laws of 1896, which read as follows: " Every person of full age, who shall be a resident

152          People ex rel. French *v.* Lyke.          [May,

Opinion of the Court, per O'Brien, J.          [Vol. 159.

and inhabitant of any town or city for one year, and the mem-
bers of his family who shall not have gained a separate settle-
ment, shall be deemed settled in such town or city, and shall
so remain until he shall have gained a like settlement in some
other town or city in this state, or shall remove from this state
and remain therefrom one year. * * * No residence of
any such poor person in any almshouse, while such person, or
any member of his or her family is supported or relieved at
the expense of any other town, city, county or state, shall
operate to give such poor person a settlement in the town
where such actual residence may be."

The contention in behalf of the defendant is that since the
poor persons in question have not been confined in an alms-
house, they became settled after one year at their place of
residence, irrespective of the fact that during all that time
they were supported as a county charge. If the disjunctive
*or* is supplied after the word *almshouse*, in the statute above
quoted, obviously there would then be no basis for this con-
tention, since the law then would mean just what it meant
before. The whole argument for the defendant rests upon
the omission in the revision of this single word. That it is
due to a mistake or inadvertence on the part of a copyist or
printer we cannot doubt. Unless the disjunctive is to be
understood as following the word almshouse, the other words,
" while such poor person, or any member of his or her family,
is supported or relieved at the expense of any other town,
city, county or state," have no significance whatever, since
they add nothing to the meaning of the sentence. Indeed, it
would be much clearer without them than it is with them, and
to suppose that the learned revisers inserted them without the
disjunctive expressed or understood would be an example of
tautology not to be imputed to them or to the legislature.
But the construction of the statute urged in behalf of the
defendant would conflict with other provisions of the law,
and produce in practice great confusion and discordant results.
It is plain that the revision still preserves the distinction
between town and county poor ; and yet, under the construc-

tion urged, that distinction would disappear after a year's residence of a county pauper in any town or city, unless such residence was in the almshouse, and in counties where there does not happen to be an almshouse at all, it would follow that there could not be any county poor, since the existence of that class would depend entirely upon residence in an almshouse. It is not conceivable that such a radical change in the law was intended ; and all this is avoided by reading the statute with the disjunctive *or* after almshouse, as was the case before the revision.

Moreover, it may be added that if the courts were compelled to follow the literal reading of this statute, we would feel constrained to reach the same conclusion as if the missing word was supplied. The popular meaning of the word " almshouse " is, of course, well understood, but the revisers and the legislature have not confined us to the popular meaning. They have given to the word a much wider and more comprehensive definition than it has in popular usage. That may properly be termed the statutory definition which is found in the second section of the Poor Law. It is there defined as a " place where the poor are maintained at the public expense." It is not necessary that it should be a public building or that there should be but one place. They may be maintained in asylums (Laws 1884, ch. 438), at private houses and at their own homes. (Poor Law, §§ 3, 5, 23, etc.) Indeed, in some cases the public authorities are prohibited from taking certain persons to the almshouse and are required to support them elsewhere. (§§ 56, 80, 23.) Therefore, when the relator administered relief to the family in question at the house where they lived, it was a place where the poor were supported at the public expense within the meaning of the statute, and while not an almshouse in the general and popular sense, it was in the statutory sense. We think that the disposition of the controversy by the courts below was right and that the order should be affirmed, with costs.

All concur (Parker, Ch. J., Haight, Martin and Vann, JJ., on first ground stated in opinion.)

Order affirmed.