NICKOBON, INC., Landlord, *v.* GEORGE ROSS, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, August 12, 1947.

*Herman Horowitz* for landlord.

*Hyman W. Sobell* for tenant.

WATSON, J. This is one of twelve pending summary proceedings commenced by the landlord to recover possession of premises described in the respective petitions, which are occupied by the several tenants for dwelling purposes. All of the tenants appear by the same attorney. The issues of fact and questions of law are the same in all of the proceedings. Both sides have stipulated that the testimony taken at the trial of the instant proceeding and the court's decision rendered after trial shall be deemed the evidence and decision in all of the other eleven pending proceedings.

The particular section of the Federal Housing and Rent Act of 1947 (Public Law 129), upon which the proceedings are founded, provides as follows: " Sec. 209 (a). No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless * * * (4) the landlord seeks in good faith to recover possession of such housing accommodations for the

immediate purpose of substantially altering, remodeling, or demolishing them and replacing them with new construction; and the altering or remodeling is reasonably necessary to protect and conserve the housing accommodations and cannot practically be done with the tenant in occupancy, and the landlord has obtained such approval as may be required by Federal, State, or local law for the alterations, remodeling, or any construction planned * * *.''

The petition alleges: '' The landlord seeks in good faith to recover possession of the housing accommodations for the immediate purpose of demolishing them and replacing them with a new construction and the landlord has obtained such approval as may be required by Federal, State or local law for the construction planned.'' It is not disputed that the new construction planned by the landlord after demolition of the present structure is a runway for the newly built bus station located in that area.

The proof shows that the landlord has obtained from the proper authorities the requisite approval of its plans for the proposed new construction. The landlord's good faith in seeking recovery of possession of the premises for the purpose stated in the petition is not questioned. It is contended by the tenant, however, that the landlord's proof is not sufficient to entitle it to a final order of eviction for the reason that the kind of new construction which it proposes to replace the present housing structure is not one to be used for housing accommodations, as intended by the act. The landlord argues, in substance, it is of no consequence that the new construction is to be of a type other than for housing, since the act does not specifically state that the new construction shall be for housing accommodation. With this interpretation of the act, I do not agree.

Building a garage, a taxpayer for commercial or business use, a concrete highway, or, as here, a runway for a bus terminal, is, in each instance, a new construction. Mindful of the existing acute housing shortage which the general purpose of the act is designed to assist in relieving, it seems almost incredible that Congress intended to permit demolition of buildings in use as housing accommodations to be replaced by any one of the types of new constructions mentioned.

An analysis of paragraph (4) of subdivision (a) of section 209 persuades the following reasoning and conclusion that the only purpose for permitting demolition of buildings used for housing accommodations was to have them substituted by new constructions of the same nature. In instances where recovery of posses-

sion of such buildings is sought for the purpose of substantially altering them and the altering or remodeling is *reasonably necessary to protect and conserve the housing accommodations,* a tenant may not be evicted from the premises unless it is shown also that the alterations or remodeling cannot practically be done with the tenant in occupancy. It logically follows that where demolition is necessary, the new construction to be erected in place of the old one should be of the same nature in order to conserve housing accommodations in the present crisis; otherwise, the new construction for purposes other than housing would aggravate rather than relieve the shortage.

Section 3 of title I of the Act lends support to this conclusion. It amends title VI of the National Housing Act, as amended, by adding to the end thereof a new section, designated section 609, pertaining to veterans of World War II. There, in subdivision (a) of section 609, the present housing situation is recognized as well as the need for relief. It reveals also the intention of the framers of the Federal Housing and Rent Act of 1947, to alleviate the general condition by the use of this language in said section: " In order to assist in relieving the acute shortage of housing which now exists and to promote the production of housing for veterans of World War II at moderate prices or rentals within their reasonable ability to pay  *  *  *."

Although in paragraph (4) of subdivision (a) of section 209 of the Housing and Rent Act of 1947, the words " for housing Accommodations " do not appear after the phrase " demolishing them and replacing them with new construction ", this section must be read together and in harmony with all of the other provisions of the act in order to effectuate its beneficial intent to ease the present housing crisis (*Trade Accessories* v. *Bellet,* 184 Misc. 962; see, also, *Hudler* v. *Golden,* 36 N. Y. 446; *Archer* v. *Equitable Life Assurance Society,* 218 N. Y. 18, 25; *New York Railways Co.* v. *City of New York,* 218 N. Y. 483, 490). The courts have stated time and again that all statutes must be construed as to give effect to the evident intention of the legislative body, and to prevent inconsistency, unreasonableness, or unconstitutionality, it is permissible to disregard or to supply words obviously inserted or omitted by mistake. (*Matter of Deuel,* 116 App. Div. 512, 515, citing cases; *New York Railways Co.* v. *City of New York, supra; Archer* v. *Equitable Assurance Society of New York, supra; 103 Park Ave. Co.* v. *Exchange Buffet Corp.,* 242 N. Y. 366, 374–375; *Flynn* v. *Prudential Ins. Co.,* 207 N. Y.

315, 319–320; *Matter of Connery* v. *Sewell*, 126 Misc. 418, 420.)

Reading the act in its entirety and applying the rules of construction enunciated in the authorities cited, the conclusion is inescapable that although the expression in paragraph (4) of subdivision (a) of section 209 of the Act, regarding the type of new construction which should replace the demolished housing structure be imperfect or vague, Congress intended that the new construction shall be for housing accommodations.

Accordingly, the tenant is entitled to a final order dismissing the landlord's petition on the merits.