Ronald GRABOSKI, et al., Plaintiffs,

v.

Rudolph GUILIANI, et al., Defendants.

Serafino F. VERLARDI, Plaintiff,

v.

NEW YORK CITY FIRE DEPARTMENT PENSION FUND, Defendant.

Nos. 95 Civ. 6418 (LAK), 95 Civ. 4548 (LAK).

United States District Court, S.D. New York.

Sept. 4, 1996.

Richard D. Emery, Kevin Fitzpatrick, Martin Silberman, Marc A. Steer, Silberman & Rhine, for Plaintiffs Ronald Graboski, et al.

Serafino F. Velardi, pro se Plaintiff.

Anshel David, Marta B. Soja, Paul A. Crotty, Corporation Counsel of the City of New York, for the New York City Defendants.

Michael N. Block, Sullivan & Liapakis, P.C., New York City, for Uniformed Firefighters Association and its Trustees.

Tina C. Kremenezky, Richard M. Betheil, Pryor Cashman Sherman & Flynn, New York City, for Uniformed Fire Officers Association.

John P. Dellera, Dennis C. Vacco, Attorney General of the State of New York, for the State of New York.

## MEMORANDUM OPINION

KAPLAN, District Judge.

In 1968 and 1970, the City of New York entered into collective bargaining agreements ("CBAs") with the Uniformed Firefighters Association ("UFA") and the Uniformed Fire Officers Association ("UFOA"), respectively. Each provided for the creation of a fund within the fire department pension plan "to provide a supplemental benefit on a variable annuity basis for [certain firemen or fire officers], as determined by the [plan] trustees." Those funds became known as the Variable Supplements Funds ("VSFs"). The implementing legislation, in its current form, limits VSF payments to plan beneficiaries who retired "for service"—i.e., after putting in the requisite number of years—on or after October 1, 1968, thus excluding disability retirees among others from the benefit.

The *Graboski* plaintiffs allege three principal federal claims. First, they assert that the exclusion of disability retirees from the class eligible to receive VSF payments constitutes discrimination on the basis of disability in violation of Titles I and II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(a), 12132. Second, they contend that disability retirees were among the intended VSF beneficiaries under the CBAs and that the legislation that limited VSF payments to "for service" retirees violated the Contract and Equal Protection Clauses of the United States Constitution. Third, they assert that the statutory limitation of VSF payments to those who retired on or after 1968 violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. The *Velardi* plaintiff pursues solely the ADA claims. Given the substantial overlap of issues and facts, the Court has consolidated the dismissal motions.

In moving to dismiss, the defendants argue that plaintiffs (1) fail, as a matter of law, to state a claim under the Contract and Equal Protection Clauses, (2) lack standing under the ADA and, in any event, fail to state a cognizable claim of discrimination, and (3) failed to exhaust their administrative remedies under the ADEA and, in any case, have asserted no cognizable claim of discrimination. Defendants seek dismissal additionally of several pendent state claims on the merits and, alternatively, for lack of jurisdiction if the federal claims are dismissed.

### Facts

As retired firefighters and fire officers (collectively "firefighters"), plaintiffs currently receive benefits under Article I or IB of the New York Fire Department Pension Fund ("FDPF"). Plaintiffs do not, however, fall into the single category of retirees which is eligible for distributions from the VSFs.

### Retirement Categories

Only firefighters who retired "for service" on or after October 1, 1968 are eligible to receive VSF distributions. N.Y.C.ADMIN.CODE ("CODE") §§ 13–382(5)(a) & (6), 13–385(a)(1), 13–392(6) & (7), 13–395(a)(1) (1995). Plaintiffs fall into one of three other categories of retirement which are not eligible for VSF payments: vested, accident disability, and ordinary disability. The principal requirements and benefits of each category of retirement differ.

To retire "for service," a firefighter must have devoted a minimum of twenty years of service to the City. The benefits of retirement for service include (1) one half of the person's final salary and (2) $\frac{1}{60}$th of the total earnings received after the person's twentieth anniversary. CODE § 13–359; Soja Aff. Ex. 1 ("Pension Handbook")[1] 6–9, 17–19.

A vested retirement benefit is available to a firefighter who performs at least fifteen but fewer than twenty years of service. A vested retiree receives an allowance equal to $\frac{1}{40}$th of the person's final average salary multiplied by the years and days of fire service. CODE § 13–361; Pension Handbook 9–10, 19–20.

Accident disability retirement, for which a firefighter qualifies if he or she is found unable to perform regular job duties because of an accidental injury received in the line of duty, is generous. A firefighter retiring for accident disability receives a pension of three quarters of the person's final salary, irrespective of the length of the employment. An accident disability retiree who has worked more than twenty years receives additionally a pension equal to $\frac{1}{60}$th of the person's total earnings received after the twentieth anniversary. CODE § 13–366; Pension Handbook 22–23.

Ordinary disability retirement entitles one to an allowance of one-third of the final salary (if fewer than ten years of service) or one half of the final salary (if ten to twenty years of service). To retire for ordinary disability the person must be found unable to perform the regular job duties because of disability, although the disability need not have developed in the line of duty. CODE § 13–363; Pension Handbook 20–22.

*Origination of the VSFs*

The VSFs originated from two CBAs and legislation implementing those agreements, which has been modified several times.

*Collective Bargaining Agreements*

The VSFs had their genesis in the October 1, 1968 CBA between the City and the UFA. In an effort to bridge one of the perennial gaps between labor and management, the City agreed, subject to legislative approval, to invest part of the FDFP in equities rather than fixed income securities and to create a fund from the enhanced return that the parties assumed would be realized. The fund (now called the VSF) would be used to pay additional pension benefits. The pivotal clause of the UFA CBA, Article VII, Section 6, provided in relevant part:

"The City and the Union agree to cause to be paid over to a separate fund, established within the Fire Department Pension Fund, the firemen member portion of the proceeds of the annual yield and capital appreciation realized or unrealized by reason of investment in equities, in excess of the yield which would have resulted from investments such as bonds and mortgages which the Pension Fund is currently purchasing.

"It is further agreed that the maximum permissable [*sic*] amount be so invested as equities without undue impairment for the Article IB Fund by conversion from Fixed Income to Equities. *The purpose of this fund shall be to provide a supplemental benefit on a variable annuity basis for Article I and IB firemen, as determined by the trustees.* * * *

"It is also agreed that the City and the Union shall jointly sponsor and support appropriate legislation to expand within a reasonable scope the present permissable [*sic*] limits on investments." (Graboski Aff.Ex. 1, at 6) (emphasis added)

On June 2, 1970, the City entered into an agreement with the UFOA which was, in substance, identical to the agreement with the UFA regarding the creation of a VSF. The italicized portion reappeared verbatim in the UFOA agreement, except that the word "firemen" was replaced by the words "Fire Officer," making the provision relevant to the UFOA's membership. (*Id.* Ex. 2, at 14)

*Implementing Legislation*

Chapter 877 of the Laws of New York of 1970, a precursor to the provisions of the

---

**1.** Exhibit 1 to the Soja affidavit is the Fire Department Pension Handbook for the City of New York.

Administrative Code that are the subject of this lawsuit, was the first piece of legislation seeking to implement the VSFs, as contemplated by the two CBAs. Chapter 877 stated that the VSFs would be administered by a board of trustees, which was vested with discretion to authorize payments from the VSFs. 1970 N.Y.Laws ch. 877, §§ B19–43.0, B19–63.0. The legislation, moreover, defined the permissible class of beneficiaries as "[a]ny person who (a) receives a retirement allowance by reason of having retired *from service* as a member of pension fund one or pension fund one-B and as a [firefighter [2]], or (b) receives a benefit by reason of election of an option by such a retired [firefighter]." *Id.* §§ B19–40.00 subd. 5, B19–60.0 subd. 6 (emphasis added).

In 1972, the Legislature amended the italicized portions to change "from service" to "for service," explicitly characterizing the changes as corrections of typographical errors. 1972 N.Y.Laws chs. 1011, 1012. In light of the differing implications for eligibility based on retirement "for service" as opposed to "from service," the *Graboski* plaintiffs make much of the initial wording of chapter 877 of the 1970 New York Laws; they take the position that the Legislature unconstitutionally stripped them of benefits to which they were entitled under the guise of correcting typographical errors. (*See* Graboski Mem. 7)

Subsequently, the Legislature has made further changes, such as replacing the trustees' discretion in awarding VSF payments in favor of a fixed payment schedule and codifying the practice of the trustees to limit VSF payments to those who retired on or after October 1, 1968. *See, e.g.*, 1993 N.Y.Laws ch. 480; 1989 N.Y.Laws ch. 583. The Legislature eventually eliminated VSF eligibility for those "who receive a benefit by reason of an option by such a retired [firefighter]." 1993 N.Y.Laws ch. 480; 1989 N.Y.Laws ch. 583. This provision had referred to the survivors or beneficiaries of those retirees who had opted to receive reduced benefits in exchange for creating rights in survivors or beneficia-

ries to receive a portion of the benefits after the retiree's death.[3] Other changes have been made to the VSF statutes, though none of consequence to the issues now before the Court.

## Discussion

### Contract Clause

The premise of the Contract Clause claim advanced by the *Graboski* plaintiffs is that the CBAs entitled them to VSF payments but that the 1972 amendment changing the word "from" to "for" impaired their contractual rights. There are two problems with plaintiff's position: the premise is incorrect and they misconstrue the effect of the 1972 amendment.

The CBAs at issue here were, from plaintiff's point of view, at best Delphic and at worst silent as to the intended beneficiaries of the VSFs. They provided only that the VSFs were to provide benefits "for Article I and IB firemen [and fire officers], *as determined by the trustees.*" (Emphasis added) This clause readily may be construed as meaning only that the determination of which Article I and IB firemen and officers would receive such payments was committed to the discretion of the trustees, which is a far cry from creating in plaintiffs' favor a contractual right to receive VSF payments. Moreover, this issue is not a novel one.

The CBAs relevant here were agreed to after then Mayor John V. Lindsay appointed a special panel to assist in contract negotiations between the City and the unions for police officers, firefighters, and sanitation workers. The panel, chaired by former Supreme Court Justice Arthur J. Goldberg, recommended the creation of a supplemental pension fund in each of these departments. *Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 754 (2d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). In consequence, language substantially identical to that in the firefighters' CBAs was incorporated into the CBA between the City

---

2. One section addressed firemen while the other addressed fire officers.

3. *See* Mirro Aff. ¶¶ 17–20 & Ex. E; Soja Aff. Ex. 8, at 1; *see generally* Pension Handbook at 14–15, 24 (explaining options under current law).

and the union representing police officers. *See id.* ("The purpose of this variable annuity shall be to provide a supplemental benefit on a variable annuity basis for Articles I and II, as determined by the trustees."). The plaintiffs in *Castellano* were retired police officers who had not retired "for service" and who challenged their ineligibility for VSF payments under parallel provisions of the Administrative Code applicable to New York City Police Department retirees. *See* CODE §§ 13–246, 13–247, 13–251, 13–252, 13–256, 13–268, subd. 5, 13–269, 13–278, subd. 5; 13–279.

Similar to the plaintiffs in this case, the plaintiffs in *Castellano* argued that the implementing legislation contravened the spirit and substance of the police CBA, which they claimed entitled them to VSF payments.[4] The Second Circuit disagreed, holding that the CBA did not confer any contractual rights on the plaintiffs:

> "The collective bargaining agreement, which follows the language of the Goldberg panel report, merely sets up a 'supplemental pension fund' that has as its purpose 'to provide a supplemental benefit on a variable annuity basis * * *, as determined by the trustees.' It says nothing about who may be beneficiaries. Simply because the agreement is silent as to which members will receive VSF payments, it does not follow from this silence that *all* pensioners are contractually entitled to such payments. The administrative code, on the other hand, speaks to the matter clearly: '[W]here the statute speaks with clarity, the statute is the only safe guide through the arcane area of public employees' pen-

sion rights.' [citation omitted] In short, the collective bargaining agreement created a fund; it did not establish the beneficiaries of that fund. The beneficiaries were determined by the legislature in its implementing statute." *Castellano,* 937 F.2d at 757 (emphasis and ellipsis in original).

*Castellano* therefore disposes of plaintiffs' contention that they were entitled to receive VSF payments by virtue of the CBAs. The Second Circuit has determined that substantially identical contractual language did no such thing.

■ What remains of plaintiffs' Contract Clause claim is the effort to distinguish *Castellano* on the theory that the original implementing legislation for the fire department, chapter 877 of the Laws of New York of 1970, entitled them to VSF payments, and that the entitlement was stripped by the 1972 amendment under the guise of correcting typographical errors.[5] Put another way, plaintiffs seize upon *Castellano's* ruling that the implementing statute "is the only safe guide through [this] arcane area" to argue that they are entitled to VSF payments because chapter 877 of the Laws of 1970 granted the right to such payments to those who retired "from service," a group that includes plaintiffs, rather than "for service" as was true of the initial legislation implementing the police department VSF.

Plaintiffs' argument ignores the fact that the use of the word "from" rather than "for" in the legislation implementing the fire department VSF's manifestly was a typographical error. The VSFs for the police and fire

---

4.  *See, e.g., Castellano* Appellants Br. 8 (Dec. 4, 1990) ("Appellants contend that as the contract in no way limited or excluded any Article I or Article II members from the supplemental pension fund benefits, and that they are being deprived of payments in violation of their [constitutional] rights . . ."); *id.* at 21 ("Here the expectations as set forth in the collective bargaining agreement was that members of the Pension Fund, Articles I and II would receive a variable supplement benefit. There was no exclusion of any member by the terms of the contract or in the Goldberg Report."); *id.* at 25 ("If in fact the legislature made a decision to exclude disability and vested retirees, that decision impaired the obligation of the con-

tract the legislation was designed to effectuate, because the contract makes no such exclusion."); *see also Castellano,* 937 F.2d at 756–57.

5.  Plaintiffs alternatively posited another argument—that the language of the 1970 implementing legislation defining the class of VSF beneficiaries to include those who "receive a benefit by reason of election of an option by such a retired [firefighter]" entitled anyone who elected retirement to the VSF. This interpretation is devoid of contextual or other support. That language plainly referred to survivors or beneficiaries of the retirees referred to in the preceding clause. *See* note 3 *supra* and accompanying text.

departments have a common origin in the Goldberg report and in substantially identical language in the several CBAs. The bill implementing the fire department VSFs that passed the Legislature, Assembly Bill No. 6509 (Mar. 30, 1970), used the phrase "for service" rather than "from service" in both relevant clauses. (Letter, Assistant Corporation Counsel Soja to Court, June 13, 1996 ("Soja Letter"), Ex. B) [6] The engrossed bills signed by the Governor that initially implemented both the police and fire department VSFs were identical save for (1) necessarily differing references to patrolmen, police superior officers, firemen and fire officers, and (2) the use of the word "from" rather than "for" in the fire department bill.[7] *Compare* 1970 N.Y.Laws ch. 877, §§ B19–40.0, subd. 5, B19–60.0, subd. 6 (fire department) *with* 1970 N.Y.Laws ch. 876, §§ B18–60.0, subd. 5, B18–80.0, subd. 5 (police department). Moreover, when the Legislature amended the Administrative Code provisions governing eligibility for the fire department VSFs in 1972, it was crystal clear that it did nothing more than correct typographical errors that first entered the bill after it had passed the Legislature and before it was signed by the Governor. The letter in support of the bill from the chairman of the State Commission on Public Employee Pension and Retirement Systems stated that "the word 'for' was incorrectly printed as 'from' when Assembly Bill No. 6509 was engrossed, becoming chapter 877 of the Laws of 1970." (Mirro Aff.Ex. F)

In these circumstances, there is no doubt whatever as to what the Legislature intended in enacting the legislation that implemented the fire department VSFs. Payments from those funds were to be limited to those who retired "for service," a term of art that necessarily excluded disability and certain other retirees including the plaintiffs. The serendipitous typographical errors, promptly corrected by the Legislature, do not support plaintiffs' contention that anyone other than "for service" retirees is or ever was entitled to VSF payments. The Court is bound to accept the obvious intent of chapter 877 of the Laws of 1970 rather than erect on the errors an edifice that the Legislature never intended to build. *Accord, Blaschko v. Wurster,* 156 N.Y. 437, 442–43, 51 N.E. 303 (1898) ("The use of a wrong word, conceding it to be such, which was doubtless an inadvertence, should not be allowed to defeat the intention of the law"); *People ex rel. French v. Lyke,* 159 N.Y. 149, 152, 53 N.E. 802 (1899) (rejecting party's argument that wholly "rests upon the omission in the revision [of the statute] of this single word" which is "due to a to a mistake or inadvertence on the part of a copyist or printer"); *In re Deuel,* 116 App. Div. 512, 514, 101 N.Y.S. 1037 (1st Dept.1906) ("We are satisfied ... that the omission of the word 'not' was a mere scrivener's error, and that the section as apparently amended in this particular should be read as if word 'not' had been retained in the clause"); *Nickobon, Inc. v. Ross,* 189 Misc. 557, 560, 72 N.Y.S.2d 126, 129 (N.Y.Mun.Ct.1947) ("The Courts have stated time and again that all statutes must be construed as to give effect to the evident intention of the legislative body, and ... it is permissible to disregard or to supply words obviously inserted or omitted by mistake"); *see generally* N.Y.STAT. § 362 (McKinney 1971) (courts may conform statute to intent of Legislature if mistake is obvious).

Plaintiffs, to be sure, have favored the Court with extensive submissions of affidavits, contemporaneous publications and other such material designed to show that at least some of those interested in the CBAs understood or intended that all retirees would be eligible to receive VSF payments. None of that material is genuinely probative of the objective manifestations of intent that occurred during the negotiation of the CBAs, the only intent or understanding that is material to contractual interpretation under New York law. *See, e.g., Rule v. Brine, Inc.,* 85 F.3d 1002, 1010 (2d Cir.1996); *Hanson v. McCaw Cellular Communications, Inc.,* 881 F.Supp. 911, 916 (S.D.N.Y.1995), *aff'd,* 77

---

**6.** Plaintiffs have not disputed the authenticity of the copy of A. 6509 submitted by the City.

**7.** It is worth noting also that even the bill submitted by the UFA, which was not that enacted, contained the "for service" rather than "from service" language. (Soja Letter & Ex. C)

F.3d 663 (2d Cir.1996). More basically, however, *Castellano* makes clear that it is the implementing legislation that controls, and the meaning of that legislation is clear.

As plaintiffs and those similarly situated never had any right to the payments from the VSFs, their Contract Clause claim is without merit.

*Equal Protection Clause*

■ The claim by the *Graboski* plaintiffs that their ineligibility for VSF payments violates the Equal Protection Clause mimics another argument considered and rejected in *Castellano*. In affirming dismissal of the equal protection claim in that case, the Second Circuit held that the statutory scheme was to be measured against the rational basis standard, which was satisfied easily. In language equally applicable to the statutes at issue here, the Court held:

> "In allowing VSF payments only to 'for service' retirees, the city struck a balance between 'for service' and other retirees. If the city had not struck such a balance, and allowed VSF payments across the board, disability retirement might be too favorable an option.... Similarly, granting VSF benefits to 'for service' retirees, while refusing those benefits to early retirees, serves the legitimate governmental interest of discouraging experienced members ... from seeking early retirement." 937 F.2d at 756.

The limitation of VSF payments to firefighter retirees who retired for service after October 1, 1968 is equally inoffensive to the Equal Protection Clause. *Crown v. Trustees of Patrolmen's Variable Supplements Fund,* 659 F.Supp. 318 (S.D.N.Y.), *aff'd,* 819 F.2d 47 (2d Cir.1987) (dismissing equal protection challenge by police retirees who retired prior to October 1, 1968 to their ineligibility for VSF payments). Accordingly, the equal protection claim should be dismissed.

*ADA*

■ Plaintiffs in both actions contend that the exclusion of ordinary disability or accidental disability retirees from the VSF payments violates Titles I and II of the ADA. The *Graboski* plaintiffs allege similar violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The following conclusions would be the same under the Rehabilitation Act and the ADA.[8]

*Standing*

Defendants contend that all plaintiffs lack standing under the ADA because none is a "qualified individual with a disability" as defined by the relevant provisions of the statute.

Title I of the ADA, which addresses various forms of employment discrimination, prohibits discrimination against a "qualified individual with a disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In the context of Title I, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). It is defendants' position that plaintiffs, who are disability retirees, are not covered under Title I because they are no longer able to perform the essential functions of their former jobs,

---

**8.** In relevant part, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability.... shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (1996 Supp.). In this case, the protection afforded is essentially coextensive with the protection under Titles I and II of the ADA. *See also* 29 U.S.C. § 794(d) (1996 Supp.) (standards in determining employment discrimination under the Rehabilitation Act shall be the same as those applied under Title I of the ADA);

45 C.F.R. § 84.3(k)(*l*) and (4) (setting forth relevant definitions of qualified individual with a disability under the Rehabilitation Act, which are substantively the same as under Titles I and II of the ADA). One of the principal differences between the Rehabilitation Act and the ADA is that the ADA expanded the scope of covered entities and employers beyond those receiving federal financial assistance. *Compare* 42 U.S.C. § 12111(2) & (5) *with* 29 U.S.C. § 794(a). The *Graboski* complaint alleges that the federal financial assistance requirement of the Rehabilitation Act is met. (*Graboski* Cpt. ¶ 86)

and, in any event, former employees are excluded from coverage. In other words, the City argues that once plaintiffs retired on the basis of disability, the ADA no longer requires that they be treated even-handedly.

Such a crabbed view of the ADA's coverage would undermine the statute's unambiguous remedial purpose. Title I of the ADA expressly prohibits discrimination in the provision of fringe benefits. 42 U.S.C. § 12112(b)(2); *see also* 29 C.F.R. § 1630.4(f). As certain fringe benefits (such as pensions and health insurance continuation) are meaningful only post-employment, it is only logical that the statute's coverage reaches the period when the employment benefits are to be reaped. Moreover, the definition of "employee" under the ADA parallels that under Title VII, 42 U.S.C. § 2000e *et seq.*, and was intended to be given the "same meaning."[9] 29 C.F.R.Pt. 1630 App. at 401 (1995) (interpreting § 1630.2(a)–(f); *see also* H.R.REP. No. 485(II), 101st Cong., 2d Sess. 54, 76, 149, *reprinted in* 1990 U.S.C.C.A.N. 267, 336, 359, 432 (Title I adopts or incorporates by reference certain definitions from Title VII, including the definition of "employee"). Under Title VII, "discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct" is actionable.[10] *Pantchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir.1978); *see also Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994); *Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir.1988) (collecting cases); *Rutherford v. American Bank Commerce*, 565 F.2d 1162, 1165–66 (10th Cir.1977). Accordingly, several courts have held that discrimination in connection with post-employment benefits is actionable by former employees under Title VII.[11] *See EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1331 (5th Cir.1991) (retirement and profit sharing plans challenged by former employee); *Brown v. New York State Teachers' Retirement System*, 834 F.2d 299 (2d Cir. 1987) (challenge by two retired teachers of pension annuity benefits determined by sex-distinct mortality tables); *EEOC v. South Dakota Wheat Growers Ass'n*, 683 F.Supp. 1302, 1304–05 (D.S.D.1988) (continuation of health insurance coverage for spouse of former employee). The definition of the term "otherwise qualified" in Title I of the ADA was not intended to distinguish this employment discrimination law from Title VII by abrogating coverage of former employees challenging discrimination arising out of the employment relationship.[12]

---

**9.** *Compare* 42 U.S.C. § 12111(4) (ADA defines "employee" as "an individual employed by an employer") *with* 42 U.S.C. § 2000e(f) (same definition under Title VII but exempting elected public officials and their staff or appointees).

**10.** The Fourth and Seventh Circuits reject the view that Title VII covers former employees, theorizing that the statutory language, properly construed, does not support that result. *Robinson v. Shell Oil Co.*, 70 F.3d 325, 331 (4th Cir. 1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996); *Reed v. Shepard*, 939 F.2d 484, 492–93 (7th Cir.1991).

**11.** The same result has been reached by courts interpreting the ADEA. *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1088–89 (5th Cir.1987) (discontinuance of severance pay and medical insurance coverage challenged by former employee).

**12.** The question whether former employees have standing under the ADA to challenge discrimination with respect to post-employment benefits has been addressed sparingly and with differing results. Consistent with the conclusion reached here, one district court held that former police officers may be covered under Title I for purposes of challenging a change in their post-employment health insurance coverage as part of their disability pension. *Northen v. City of Chicago*, 841 F.Supp. 234, 235–36 (N.D.Ill1993).

In a recent decision, Judge Stein of this Court held that New York City police officer retirees with disabilities were not "qualified individual[s]" with disabilities within the meaning of Title I of the ADA, and therefore lacked standing to challenge their ineligibility for supplemental benefits. *Castellano v. City of New York*, No. 95 Civ. 5014 (SHS), 1996 WL 361547 at **3–4 (S.D.N.Y. June 28, 1996). However, that holding did not consider any of the points which lead this Court to the opposite conclusion.

Other decisions to have accepted the standing argument advanced by defendants include *Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir.1996) (holding, over a forceful dissent, that a former employee could not challenge an adverse health care plan amendment capping benefits for AIDS-related expenses after the employee was terminated); *Parker v. Metropolitan Life Ins. Co.*, 875 F.Supp. 1321, 1325–27 (W.D.Tenn.1995) (no standing of long-term dis-

Title II of the ADA prohibits public entities[13] from "exclud[ing]" a qualified individual with a disability, by reason of his or her disability, "from participation in" or receipt of "the benefits of services, programs, or activities" of the public entity, or "subject[ing]" the individual "to discrimination." 42 U.S.C. § 12132. For Title II purposes, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without reasonable modifications to rules, policies or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131. Defendants contend that the plaintiffs lack standing under Title II of the ADA because "they are ineligible to receive the service retirement benefit package, including the VSF benefits," and were not excluded from receiving VSF payments by reason of disability alone. (City Mem. 17)

This standing argument simply begs the question of whether or not the exclusion of disability retirees from VSF payments states a claim of discrimination under the ADA.[14] Standing under Title II cannot be defined conclusively by the entity's eligibility standard. If it were, no exclusionary policy, no matter how discriminatory or unjustified, ever could be challenged.

Accordingly, this Court holds that these plaintiffs have standing under the ADA to challenge the exclusion of disability retirees from eligibility for VSF payments.

*Discrimination*

■ Defendants argue also that plaintiffs fail to state a claim of discrimination as a matter of law. Here they are on much stronger ground.

As part and parcel of this argument, defendants point to a Notice issued by the EEOC concerning the precise substance of plaintiffs' claim. EEOC Notice, "Questions and Answers About Disability Service Retirement Plans Under the ADA," No. 915.002, May 11, 1995 ("Notice"). The Notice clarifies that nothing in the ADA requires an employer to provide a disability retirement plan in the first place, and that an employer may offer solely a service retirement plan, without violating the ADA, so long as that plan treats persons covered by the ADA the same as other employees. Notice, ¶ 7B. The Notice states further that if an employer does provide a disability retirement plan, the employer may offer lower benefits under the disability retirement plan than a service retirement plan "because they are two separate benefits which serve different purposes." *Id.* ¶ 7C. For example, there would be no discrimination under the ADA in any of the following circumstances:

"● a service retirement plan might enable any employee with 20 or more years of service to retire with an annuity equal to 50% of the individual's highest annual compensation. But, the disability retirement plan, payable when illness or injury prevents the individual form continuing work, might provide an annuity equal only to 45% of the individual's highest annual compensation;

"● service retirees might receive periodic increases (for example, based on inflation or an increased return on invested pension funds) while disability retirees remain at a fixed benefit level;

"● a service retirement plan might disregard outside earnings while a disability retirement plan contains an outside earnings offset provision." *Id.*

As the Notice explains, none of these examples makes eligibility for the service retire-

---

ability plan participant to sue former employer over plan) (citing *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988)). This Court expressly declines to follow those decisions.

**13.** The public entities covered under Title II include local governments and any departments or agencies thereof. 28 C.F.R. § 35.104.

**14.** Indeed, Judge Stein's analysis in *Castellano* acknowledged their was substantial overlap between the standing claim and the sufficiency of the discrimination claim. 89 F.3d 1523, 1529 (11th Cir.1996). *See also Alexander v. Choate,* 469 U.S. 287, 300 n. 19, 105 S.Ct. 712, 719 n. 19, 83 L.Ed.2d 661 (1985) (under Rehabilitation Act, "the question of who is 'otherwise qualified' and what actions constitute 'discrimination' ... would seem to be two sides of the same coin").

ment plan benefits turn on whether or not the person has a disability. *Id.* ¶ 7D.

In contrast, discrimination exists when an employer denies persons with disabilities "access to a plan" or benefits of a particular plan that is available to others, *id.* ¶ 7E, as in the following examples:

"● persons covered by the ADA who qualify for both a service retirement and disability retirement plan are required to take a disability benefit which is less advantageous;

"● an employer requires persons covered by the ADA to serve 25 years to obtain a service benefit, while persons not covered by the ADA are eligible for service retirement after 20 years;

    \*      \*      \*      \*      \*      \*

"● persons covered by the ADA who earn a service retirement benefit are given a cost of living increase every third year of retirement, while all other service retirees receive an annual cost of living increase." *Id.*

Under these EEOC guidelines, the VSF statutes facially are compatible with Title I of the ADA. There is no dispute that firefighter retirees who have served at least twenty years and are disabled have the option to choose either retirement for service or the category of disability retirement for which he or she is qualified. The eligibility for VSF payments accompanying retirement for service on or after October 1, 1968 thus is available on equal terms to persons who have disabilities and those who do not. Consequently, the CODE is not discriminatory.

Plaintiff Serafino Velardi appeared at first blush to state a different claim from the others. He averred in his moving papers that he was "required to retire on ordinary . . . disability after more than 20 years of fire duty." (Velardi Aff. for Sum.Judg. ¶ 20; *see also* Velardi Aff. on Opp. to Def's Dismissal Mot. ¶¶ 10, 20) However, it was clarified at oral argument that his application to retire

for accidental disability was denied, following which he chose to retire for ordinary disability. He does not contend that anyone misled him about the option to retire for service. Rather, he was not informed about the extent to which retirement for service may have been more favorable. (Tr., June 2, 1996, at 34–36 & Ex. A) As Mr. Velardi concedes that he was not misled and was not prevented from exercising his option to retire for service, his claim stands on equal footing with the other plaintiffs.

This Court is bound to defer to reasonable interpretations of Title I of the ADA proffered by the EEOC, the regulatory agency charged with its administration. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). There is nothing unreasonable about the EEOC's view. It gives effect to one of the primary goals of the ADA—eradicating the exclusion of people with disabilities from opportunities afforded to persons without disabilities.[15] *See* 42 U.S.C. § 12112(b)(1)–(7) (defining various forms of discrimination that operate to exclude to persons with disabilities from employment-related opportunities and benefits); *id.* § 12132 (focus on exclusion from benefits of services, programs or activities of a public entity). All persons—disabled or not—who have served twenty years are eligible to retire on a basis that would include entitlement to VSF payments. No one who has served less than twenty years may retire on a basis that does so. That is not actionable discrimination.

This conclusion is supported by *Felde v. City of San Jose,* 839 F.Supp. 708 (N.D.Calif.1994), *aff'd,* 66 F.3d 335 (9th Cir.1995).[16] That case involved a challenge by a former Deputy Chief of the San Jose Fire Department who, as a disability retiree, received 20 percent less in sick leave payout than he would have received had he retired for service. Felde could have elected service retire-

---

**15.** *See also Alexander v. Choate,* 469 U.S. 287, 301, 302, 306, 105 S.Ct. 712, 720, 720, 722, 83 L.Ed.2d 661 (1985) (Rehabilitation Act guarantees "meaningful" and "equal access" to benefits).

**16.** In affirming the district court's opinion, the Ninth Circuit, in an unpublished opinion, cited the EEOC Notice, which had been issued in the interim. *Felde,* 66 F.3d at 335 (9th Cir.1995).

269

ment but chose not to do so,[17] at least in part because he otherwise would have been forced to forego certain disability-related tax advantages. 839 F.Supp. at 709–10. The Court specifically rejected plaintiff's argument that he effectively was "forced" to choose disability retirement because of the tax implications and thereby was excluded from the higher sick leave under service retirement. *Id.* at 711. In essence, the Court held that plaintiff was not treated discriminatorily because he had been afforded the option to receive the contested benefit on the same terms available to others without disabilities. Hence, defendants were entitled to dismissal of the Title I claim under the ADA. *Id.* at 710–11.

Although Title I and Title II of the ADA are not identical, the gravamen of a Title II claim also is exclusion or other discrimination on the basis of disability. The interpretative guidance to Title II, promulgated by the Department of Justice, indicates that Title I and Title II analysis coalesce in employment discrimination matters. *See* 28 C.F.R. § 35.140(b)(1) (in employment discrimination matters, the same regulations set forth by the EEOC shall apply to "any service program service, program, or activity conducted by a public entity if that entity is also subject to the jurisdiction of title I [of the ADA]."). The foregoing discussion makes clear that VSF payments are available equally to persons with and without disabilities who retire for service. Plaintiffs therefore fail to state a claim of discrimination on the basis of disability under Title II as well. *Accord, Felde,* 839 F.Supp. at 710 (leave to amend to assert Title II claim would be futile in light of dismissal of Title I claim for failure to state a claim of discrimination).

Accordingly, the ADA claims, and the parallel claim under the Rehabilitation Act, are dismissed for failure to state a cognizable claim of discrimination.

### ADEA

The *Graboski* plaintiffs allege that the limitation of VSF payments to those who retired for service on or after October 1, 1968 discriminates on the basis of age against pre–1968 retirees in violation of the ADEA. In moving to dismiss the ADEA claim, the defendants argue that plaintiffs have not exhausted their administrative remedies and, in any event, have failed to state a claim of discrimination as a matter of law. By not responding to these arguments, plaintiffs appear to have abandoned their ADEA theory. The Court nevertheless will explain briefly why the arguments for dismissal are correct.

To pursue an ADEA claim, a plaintiff first must file a complaint with the EEOC and receive a right to sue letter, a procedural requirement set forth in 29 U.S.C. § 626(d). The failure of plaintiffs to do so precludes them from bring an ADEA claim in federal court. *See, e.g., Miller v. International Tel. & Tel. Co.,* 755 F.2d 20, 23 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

Even if plaintiffs had satisfied the procedural prerequisites, their allegations do not state a claim of discrimination under the ADEA.[18] Plaintiffs have failed to allege any facts permitting an inference that the decision makers, in limiting VSF payments to retirees for service on or after 1968, were motivated by consideration of the age of the retirees. Nor have plaintiffs alleged a sufficient claim of disparate impact, as the 1968 and 1970 CBAs that established the VSF benefits and the implementing legislation were not concluded until after the class that supposedly was the victim of discrimination had retired. The ADEA does not mandate that "any improvements to a pension plan [be applied] retroactively to any active employees for past services." *United Independent Flight Officers, Inc. v. United Air Lines,*

---

17. The Ninth Circuit opinion clarified that the service retirement which plaintiff forewent required a minimum of twenty years service. 66 F.3d at 335. Thus, the service retirement at issue in *Felde* resembled in one important aspect of the service retirement available to New York City firefighters.

18. The ADEA in relevant part makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute specifically permits "differentiation ... based on reasonable factors other than age." *Id.* § 623(f)(1).

*Inc.,* 572 F.Supp. 1494, 1506 (N.D.Ill1983), *aff'd,* 756 F.2d 1274 (7th Cir.1985). Likewise, the ADEA does not mandate that any improvements in retirement benefits be applied retroactively to past employees who retired under different terms.

### Other Federal Claims

The *Graboski* plaintiffs allege two further federal claims, which are related to those discussed already. First, they allege a violation of the Revenue Sharing Act, which provides a remedy for discrimination in violation of the ADEA and the Rehabilitation Act by a local government that receives payment under that chapter.[19] 31 U.S.C. § 6711(b) (1996 Supp.). Plaintiffs provide no indication that they have exhausted their administrative remedies for that claim as is required under 31 U.S.C. § 6716(a)–(b) (1996 Supp.). In any event, as the predicate claims of discrimination are meritless, so too is the Revenue Sharing Act claim.

Second, plaintiffs advance 42 U.S.C. § 1983 claims based on the alleged violations of the Rehabilitation Act, the ADA, and the ADEA. (*Graboski* Cpt. ¶¶ 98, 133, 150) The Section 1983 claims are meritless because the underlying claims of violations of federal rights are meritless.

### Supplemental Jurisdiction

The *Graboski* plaintiffs advance several state law claims as well, alleging violations of several provisions of the New York Constitution and breach by the UFA and UFOA of the duty of fair representation under New York Civil Service Law §§ 200 *et seq.* In light of the dismissal of all the federal claims, it is appropriate to decline jurisdiction over these state claims. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Castellano,* 937 F.2d at 758–59 (affirming district court's dismissal of pendent state constitutional claims in light of the dismissal of all federal constitutional claims).

*Conclusion*

For the foregoing reasons, both actions are dismissed in their entirety.

SO ORDERED.

---

**19.** Plaintiffs' complaint cites erroneously to a repealed provision of the Revenue Sharing Act, 31 U.S.C. § 6716 as the foundation for their complaint. (*E.g. Graboski* Cpt ¶¶ 92, 130)